*In re* MARRIAGE OF JAMES RICHARD PIHALY, Petitioner-Appellant, and JEANNE MARIE PIHALY, Respondent-Appellee.

Second District   No. 2—93—0293

Opinion filed February 2, 1994.

M. Allyson Misevich, of Rockford, for appellant.

Thomas D. Luchetti, P.C., of Rockford (Thomas D. Luchetti, of counsel), for appellee.

JUSTICE WOODWARD delivered the opinion of the court:

Petitioner, James Pihaly, appeals from an order of the circuit court which granted the petition for modification of child support filed by respondent, Jeanne Pihaly, and which granted in part and denied in part respondent's petition for a rule to show cause. He raises four issues before this court: (1) the circuit court abused its discretion by increasing child-support payments to $900 per month; (2) the circuit court abused its discretion in ordering petitioner to pay $3,000 of respondent's attorney fees; (3) the circuit court erred in ignoring a previous court order modifying child support and determining that he owed an arrearage of $10,138.25; and (4) the circuit court abused its discretion by setting the child support at a percentage of his income.

Judgment for dissolution of the parties' marriage was entered on August 21, 1987. The parties have two children, Alison and Andrew. Custody of both children was awarded to respondent. Attached to the judgment was a marital settlement agreement (Agreement) executed by the parties. Pursuant to the Agreement, petitioner was ordered to pay child support of $600 per month per child and the sum of $500 per month for maintenance. By the Agreement, maintenance was to be terminated in June 1988. Additional "child support" included one-half of the house payment (approximately $600 per month), 25% of petitioner's "net" income above $4,500 per month, and 25% of any and all tax refunds. Petitioner received the tax exemptions for both minor children. At the sale of the marital residence, the net equity would be equally divided between the parties. Testimony at the dissolution of marriage hearing indicated that petitioner was a stockbroker working for E.F. Hutton. His income in 1986 was approximately $94,000. Respondent had a master's degree in nursing and was working part-time as a registered nurse at Rockford Memorial Hospital.

In the ensuing years, the parties engaged in extensive litigation. The following chart provided by one of the parties highlights the initial terms of the Agreement and the subsequent petitions for modification and the results therefrom:

| Date of Entry of Order | Direct Child Support | "Additional" Child Support | % Child Support |
|---|---|---|---|
| 8/21/87 | $1,200/mo. | 1/2 house payment | 25% of net income above $4,500 per month |
| 10/6/88 | $1,200/mo. | No change to the above | 25% of net income above $54,000 per year |
| 4/28/89 | $600/mo. | No change to the above | 25% of net income above $40,000 per year |
| 1/31/91 | $200/mo. | No change to the above | No change to the above |
| 12/3/92 | $900/mo. | No change to the above | No change to the above. |

On February 18, 1992, respondent filed a petition for modification. Therein she sought an increase in child support from $200 per month due to a substantial increase in petitioner's income, as well as an increase in the children's financial needs. On July 24, 1992, respondent filed a petition for a rule to show cause. Specifically, respondent alleged that petitioner had not made child-support payments for 1990 and 1991 of 25% of his net income over $40,000. Respondent further alleged that she was unable to pay the attorney fees incurred in connection with this proceeding.

The circuit court heard the following evidence regarding both petitions on September 8, 1992. From 1977 to 1987, petitioner was employed as a stockbroker by E.F. Hutton. In 1987, petitioner went into business with a coshareholder, Marge Larson, and formed a corporation known as Certified Consulting Services, Inc. (CCSI), a subchapter S corporation which was dissolved in 1991, when petitioner formed a solely held corporation, Pihaly, Inc. Since 1991, Pihaly, Inc., has been sharing expenses under a partnership with Larson, known as Certified Consulting Services (CCS). Neither the shareholders of CCSI nor the partners in CCS have ever shared income.

Since the formation of Pihaly, Inc., petitioner has consistently drawn a salary of $3,000 per month, plus a monthly dividend. By taking the dividends, rather than salary, petitioner defers paying income tax on the dividends and totally avoids paying social security or medicare tax on the same. Pihaly, Inc.'s income and expense statements for the periods January 1, 1992, through September 15, 1992, showed that petitioner declared and received dividends totalling approximately $85,657.

In the first 8 1/2 months of 1992, petitioner used his income, *inter*

*alia,* to make a $13,000 down payment for an automobile, to pay $415 per month on a new car loan, to contribute a total of $4,000 to his IRA account and that of his second wife, to repay a $2,500 loan and to pay a $5,000 Visa bill.

Whenever petitioner received a salary or dividend check from Pihaly, Inc., he placed it into his second wife's checking account, which petitioner had established and into which he made all deposits. All checks written from that account were written by petitioner's second wife at his direction.

During the period from November 1990 through June 1992, petitioner deposited approximately $94,000 into this account. Petitioner also used his second wife's ATM card. Pihaly, Inc., pays petitioner's second wife an annual salary of $25,000 for a variety of services.

Respondent testified that she is a registered nurse at St. Anthony's Hospital. Her gross income was $39,000 in 1991. She stated that the children's expenses had increased since the last court hearing due to higher costs for clothing, social interests, schooling and food. She wanted her daughter to attend a Catholic school, which charges an annual tuition of $2,000. Respondent estimated that she spends 90% of her take-home salary to provide for the children and maintain a household for them. Her bank account had a balance of approximately $13,000. This amount included substantial arrearage payments from petitioner.

Respondent's attorney testified that his total fees for the subject litigation were approximately $7,000, of which $1,500 were attributable to the petition for a rule to show cause filed on July 24, 1992.

In its order entered on December 3, 1992, the circuit court increased child-support payments to $900 per month from $200 a month, based upon increases in both petitioner's income and the children's financial needs. The order further stated:

> "The said Petition for Rule to Show Cause should be granted in part and denied in part. [Petitioner] did not willfully refuse to comply with this Court's prior order regarding the payment of 25% of his net income over $40,000-per year in the years of 1990 and 1991 and accordingly [respondent's] Petition for Rule to Show Cause should be denied in regard to the requested finding of contempt. The court finds, however, that [petitioner] was not entitled to deduct from his gross income his standard deduction or tax exemptions for such years in determining his net income for the purposes aforesaid; accordingly [respondent's] Petition for Rule to Show Cause should be granted in regard to the requested finding of amounts due and judgment therefor. The parties did

not intend in their written Marital Settlement Agreement to allow [petitioner] to deduct the standard deduction and exemptions in arriving at his 'net income' as defined therein."

Based upon this finding, the circuit court calculated that petitioner owed $10,138.25 in additional child support for 1990 and 1991. Petitioner's motion to reconsider was denied on February 11, 1993.

Petitioner initially argues that the circuit court erred in increasing his child-support payments to $900 per month from $200 per month. He contends that such a payment, when added to his $600-per-month mortgage payment, amounts to approximately 50% of his net income through $40,000. Petitioner maintains that this is contrary to the statutory guidelines. Moreover, he asserts that the court made no specific finding regarding this deviation.

Respondent responds that the circuit court's order increasing petitioner's child-support payments was not an abuse of discretion. She contends that the increase in petitioner's income was in itself sufficient to warrant an upward modification of child support to $900. Further, respondent maintains that there was sufficient evidence that the children's financial needs had increased since 1989 to merit an increase in child support.

The circuit court's order modifying child support will not be overturned absent an abuse of discretion. (*In re Marriage of Baptist* (1992), 232 Ill. App. 3d 906.) An abuse of discretion occurs when a circuit court's decision is against the manifest weight of the evidence. *In re Marriage of Heil* (1992), 233 Ill. App. 3d 888.

The statute reads in relevant part:

"(1) The Court shall determine the *minimum* amount of support by using the following guidelines:

| Number of Children | Percent of Supporting Party's Net Income |
|---|---|
| *** | |
| 2 | 25% " |

(Emphasis added.) Ill. Rev. Stat. 1991, ch. 40, par. 505(a)(1).

The parties' arguments on this issue overlook a factor that this court finds critical. In article II of the marital agreement, which is entitled "Child Support and Related Matters," the following language is found:

"As additional child support, Husband shall pay one-half of the mortgage, taxes and insurance (plus such amounts as the same may be adjusted from time to time due to rate or tax increases) relative to the marital home located at 1386 Read Oak Lane, Rockford, Illinois, commencing on June 1, 1987."

Article V of the Agreement, entitled "Marital Home," states in relevant part:

> "a. *Title* With respect to the marital residence, the parties shall execute such documents as are necessary to sever their joint tenancy and subsequently hold such residence as tenants in common, *with each party owning an undivided one-half interest therein.*" (Emphasis added.)

Moreover, respondent testified at trial that petitioner owned one-half of the subject residence.

We are cognizant of the fact that the parties refer to petitioner's payments on the marital residence's mortgage, real estate taxes, and insurance as "child support" or "additional child support." We find that this is not a particularly apt description.

"Child support" is defined as: "The legal obligation of parents to contribute to the economic maintenance, including education, of their children ***. In a dissolution or a custody action, money paid by one parent to another toward the expenses of children of the marriage." Black's Law Dictionary 239 (6th ed. 1990).

Typically, child-support payments go directly for the benefit of the child/children with no residual benefits for the parent making the payments. Here, petitioner owns a one-half interest in the marital residence and will, upon the sale of the house, receive one-half of the proceeds. While these payments technically support the children, they, in effect, amount to a compulsory savings program for petitioner. Given that petitioner will recoup these payments upon the residence's sale, we find that they do not qualify as child support.

■ Thus, having removed the $600 monthly mortgage payments from inclusion in the child support calculations, we are left with a $900 monthly payment which equals an annualized rate of $10,800 for child support. This amount is equal to 27% of the petitioner's net income through $40,000, a figure entirely in keeping with the statute. Accordingly, we find that the circuit court's increase of child-support payments to $900 per month is not an abuse of its discretion. A court of review has the authority to affirm the circuit court on any basis supported by the record. *Geick v. Kay* (1992), 236 Ill. App. 3d 868.

Petitioner's next argument is that the circuit court erred in awarding $3,000 in attorney fees. Specifically, petitioner contends that respondent was able to pay for her attorney fees, based upon her salary of $39,000 per year, the increase in child support and the $13,000 she has in the bank. Further, petitioner maintains that, because the circuit court did not find him to have willfully refused to comply with the court's orders, it should not have ordered him to pay part of respondent's attorney fees.

In response, respondent argues that the evidence clearly demonstrated that her salary and the child-support payments barely covered her household's expenses. She points out that the money in her bank account is primarily composed of petitioner's arrearage payment, not money she has managed to save from her salary. Further, she contends that the circuit court's determination that respondent had not willfully refused to comply with the court orders does not preclude the award of attorney fees.

Generally, attorney fees are the principal obligation of the party for whom the services are rendered. *(In re Marriage of Jacobson* (1980), 89 Ill. App. 3d 273.) A party seeking an award of attorney fees must generally prove both a financial inability to pay the fees and the ability of the other party to do so. (*In re Marriage of Cotton* (1984), 103 Ill. 2d 346.) However, in a proceeding to modify a dissolution judgment, the court may order one party to pay some or all of the attorney fees and costs necessarily incurred by the other. (Ill. Rev. Stat. 1991, ch. 40, par. 508(a)(2).) A trial court's award of attorney fees will not be disturbed absent a clear abuse of discretion. *In re Marriage of Morse* (1993), 240 Ill. App. 3d 296.

To reiterate, respondent's attorney fees totaled $7,000, which included $1,500 in fees regarding the petition for a rule to show cause. The circuit court awarded respondent $3,000 in attorney fees.

■ Respondent estimated that 90% of her take-home pay went to provide for her children and maintain a household. Her savings account balance of approximately $13,000 was in large part funded by arrearage payments. A small but significant portion of her fees was spent in litigating the subject petition for a rule to show cause. Moreover, we are not aware of any black letter law which holds that the circuit court's finding of no willful refusal to comply with court orders precludes an award of attorney fees. The circuit court weighed the various factors related to respondent's motion for attorney fees and found that petitioner should pay some, but not all, of respondent's attorney fees. This decision was not an abuse of discretion.

Next, petitioner argues that the circuit court erred in ignoring the previous court order which modified the child-support section of the marital settlement agreement in regard to the determination of his net income. He maintains that the circuit court's previous order dated January 31, 1991, made specific findings as to his net income and created a precedent as to the calculation of his net income. In said order, the circuit court found that petitioner's circumstances had substantially changed and reiterated the decrease in monthly child-support payments to $200. In response, respondent maintains that the circuit court's method of calculating petitioner's net income was proper and not an abuse of discretion.

It is axiomatic that a trial court should construe settlement agreements in marriage dissolution proceedings to give effect to the parties' intention. (*In re Marriage of McBride* (1988), 166 Ill. App. 3d 504, 508.) Agreements which provide for child support receive special care and consideration by the courts. Absent an ambiguity in the definition "net income," the trial court is compelled to follow the parties' agreement. (*In re Marriage of Thaden* (1983), 119 Ill. App. 3d 538.) A determination of child support and modification of same lies within the trial court's discretion and will not be set aside absent an abuse of that discretion. *In re Marriage of Moriarty* (1985), 132 Ill. App. 3d 895.

Petitioner's characterization of the January 31, 1991, order as precedential is unpersuasive. The order states in pertinent part:

"[T]he said Amended Counterpetition for Modification and Other Relief is granted because [petitioner's] circumstances have substantially changed in that his yearly income has decreased from $67,000.00 in 1986 to $40,000.00 in 1987, to $34,000.00 in 1988, to $11,000.00 in 1989. Such decrease warrants modification of [petitioner's] obligations for the payment of child support from $600.00 per month to $200.00 per month for the two children of the parties."

Clearly, the order gives no specific formula for determining child-support levels. Thus, it has no precedential value.

■ Conversely, in ruling on the subject petition for modification, the circuit court calculated 25% of petitioner's net income over $40,000 for 1990 and 1991, following the method set out in the Agreement, which is exactly what it was supposed to do. Accordingly, we find that the circuit court's determination of an arrearage of $10,138.25 for 1990 and 1991 is not an abuse of discretion.

Finally, petitioner argues that the circuit court erred by setting child support at a percentage of his income rather than in a dollar amount. Petitioner contends that this is a violation of section 505(a)(5) of the Act, which states:

"If the net income cannot be determined because of default or any other reason, the court shall order support in an amount considered reasonable in the particular case. *The final order in all cases shall state the support level in dollar amounts.*" (Emphasis added.) Ill. Rev. Stat. 1991, ch. 40, par. 505(a)(5).

■ Given the extreme vacillations in petitioner's income and the resulting litigation that has been caused thereby, we believe that it would be most convenient to the parties to determine child support by percentage rather than dollar amount. Nevertheless, we are compelled to follow the statute's directive. Because the trial court's order

does not comply with the above-cited statute, we reverse said order to the extent that it is not in accord with the statute. We remand this cause so that the trial court can modify its order to reflect child support stated in dollar amounts.

■ Finally, respondent filed a motion to strike portions of the petitioner's reply brief. This motion was ordered taken with the case. Respondent maintains that certain portions of said brief contain inflammatory, prejudicial remarks, statements not supported by facts or citation, and impertinent and scandalous statements. We do not necessarily agree with these assertions and, therefore, deny the motion to strike.

The judgment of the circuit court of Winnebago County is affirmed in part and reversed in part, and the cause is remanded for further proceedings in accordance with this opinion.

Affirmed in part; reversed in part and remanded.

GEIGER and QUETSCH, JJ., concur.