*In re* MARRIAGE OF ROBERT CAMERON WARD, Petitioner-Appellee, and
DOROTHY MARIA WARD, Respondent-Appellant.

Second District    Nos. 2—93—0292, 2—93—0428, 2—93—1031, 2—93—1382,
2—94—0023 cons.

Opinion filed September 30, 1994.—Rehearing denied November 14, 1994.

M. Allyson Misevich, of Rockford, for appellant.

George Fischer, of Oregon, for appellee.

JUSTICE PECCARELLI delivered the opinion of the court:

On September 18, 1991, the petitioner, Robert Cameron Ward (Robert), filed a verified petition for dissolution of marriage against the respondent, Dorothy Maria Ward (Dorothy). Judgment was entered on grounds. Following a contested part II hearing, the trial court entered a "Final Judgment [a]nd Order" on December 18, 1992. Several post-trial orders were also entered. Following each order Dorothy filed a separate notice of appeal. Dorothy filed (1) appeal No. 2—93—0292 on March 8, 1993; (2) appeal No. 2—93—0428 on April 6, 1993; (3) appeal No. 2—93—1382 on November 29, 1993; and (4) appeal No. 2—94—0023 on December 29, 1993. On May 7, 1993, Dorothy moved to consolidate appeal No. 2—93—0428 with No. 2—93—0292. We allowed this motion on May 14, 1993. On January 13, 1994, Dorothy moved to consolidate appeals Nos. 2—93—1382 and 2—94—0023 with No. 2—93—0292. We allowed this motion on January 20, 1993. All of Dorothy's appeals, therefore, have been consolidated under No. 2—93—0292. Robert cross-appeals from a post-trial order of August 18, 1993. Robert's cross-appeal (No. 2—93—1031) has been consolidated with this case for decision only. Taken with the case are (1) Robert's motion to amend his notice of cross-appeal to a notice of appeal; (2) Robert's motion to combine his cross-appeal (No. 2—93—1031) with Dorothy's consolidated appeal (No. 2—93—0292); and (3) Dorothy's motion to strike Robert's brief. Additionally, Dorothy has objected to Robert's motion to combine, and Robert has responded to

this objection. These matters will be disposed of in the course of this opinion.

Dorothy contends that the trial court abused its discretion by (1) failing to award her an increased amount of maintenance for an extended period of time considering her age, the duration of the marriage, her current indebtedness and lack of income, the couple's high marital standard of living, and Robert's annual earnings of nearly $94,000; and (2) failing to grant her an equitable portion of the marital assets in light of Robert's significant earning ability. Robert contends that the trial court was without jurisdiction to modify the judgment of December 18, 1992, and therefore erred when it (1) entered two qualified domestic relations orders (QDRO) on November 2, 1993, setting a different valuation date for his employer-maintained pension plan (Pension Plan), and a different date for his employer-maintained savings and investment plan (ESIP); and (2) reduced the unpaid portion of the cash awarded to Dorothy to a money judgment. We affirm.

The parties were married in 1966. Although they have two children by the marriage, there are neither custody nor support issues before us. Dorothy moved out of the marital home in September 1989. At the time of trial Dorothy was 49, while Robert was 50.

In the early years of the marriage, Robert served in the United States Navy. Upon leaving active service, he joined the United States Naval Reserve. Robert rose to the level of captain. Although he submitted a letter of resignation in June 1992, at the time of trial the resignation had not been officially accepted. Robert served $27^1/_2$ years in the Navy and the Reserve. He accumulated 3,659 points in his United States Navy Retirement Fund (Retirement Fund); all but 595 of these points were earned during the marriage. The total number of points accumulated corresponds to a monthly retirement benefit.

Immediately after Robert left active service, he attended graduate school in Norman, Oklahoma. To support Robert's education, Dorothy worked as a secretary in Oklahoma. Additional support was provided by the G.I. bill and Robert's part-time employment at a college radio station. Robert received his master's degree in business administration (MBA).

Robert is an employee of Commonwealth Edison Company (Com Ed). After completing his MBA, Robert accepted a job offer with Com Ed. The parties settled in Palatine, Illinois. After four years Com Ed transferred Robert and the parties moved to Schaumburg, Illinois. Five years and one transfer later, the parties resided in Byron, Illinois. Byron was the site of the parties' marital home at the time of this proceeding.

Robert's current assignment with Com Ed is assistant to the vice-president P.W.R. operations. The vice-president controls the nuclear division of Com Ed. Robert's title is "administrative engineer." Robert's annual Com Ed salary is $93,880. Additionally, Robert participates in a Com Ed Pension Plan and ESIP. Robert also maintains an insured retirement account (IRA) with A.G. Edwards. The IRA was worth more than $14,000 at the time of dissolution.

The parties enjoyed a comfortable standard of living. Dorothy testified that the family took "very nice vacations a couple weeks at a time." This was corroborated by Robert, who agreed that the parties vacationed in "far off places." Dorothy stated that during the marriage "she rarely had to make an either/or decision." Further, Dorothy testified that the parties enjoyed dinners out as well as movies and the theater. The parties owned several rental properties in Rockford, Illinois. They also owned three cars, sent a daughter to private school, and owned a completely furnished 12-room home. Dorothy's exhibit No. 2 lists the contents. This list serves to corroborate Dorothy's testimony concerning the marital standard of living. A sampling of the possessions accumulated include two 25-inch television sets, a 33-piece set of Lenox crystal, a home computer, a Hammond organ, and two paintings by Spanish surrealist Salvadore Dali.

Dorothy pursued her educational goals during the marriage. Dorothy earned a bachelor's degree in philosophy and economics in 1987 and an MBA in 1989. Dorothy testified that starting a business was "an ultimate consideration" throughout her college education.

Dorothy owns and operates her own business. In 1989 Dorothy began to evaluate locations for a business. In September 1989 Dorothy moved from the marital home. Robert stated that Dorothy "made up her mind" to move to the Chicago area; Robert claims the move was not a family decision. Dorothy stated that the couple anticipated Robert would be transferred to the Chicago area; Dorothy claims her move was a family decision. When Dorothy moved to the Chicago area from the marital home in Byron, she took a job with a temporary agency called "Wiz." After leaving Wiz, Dorothy started her business late in 1989 or early in 1990. Her enterprise, which specializes in providing staff support for small businesses, is called Asta Corporation (Asta).

Asta is heavily indebted. By October 1990 Dorothy had incorporated Asta with the assistance of $31,000 in loans. Twenty thousand dollars were borrowed from the First National Bank of Morton Grove (Morton Grove). A certificate of deposit, owned by Dorothy's aunt, secured this loan. An additional loan of $11,000 was acquired from Morton Grove. At trial, $28,000 was outstanding on the Morton Grove loans. Dorothy also had $7,800 in additional debt.

Asta is producing a negative cash flow. Asta's revenue for its first full year of operation was $6,807. During this first year, Dorothy drew $8,350 from Asta. Dorothy stated that all of this $8,350 "went back in [to Asta] before the end of that [first] year." For the three months preceding the trial, Asta generated approximately $1,500 of income monthly. During this same period Dorothy required $2,000 a month to meet expenses. Although Dorothy anticipated that Asta would eventually meet her needs, she could not project when this would occur.

Dorothy possesses secretarial skills, is able to type, and can operate a computer. She testified that she can operate desktop publishing and accounting programs. Dorothy stated she has "no steno skills to speak of." Robert, however, introduced a notebook entitled "International Economics 320" written by Dorothy in shorthand.

The trial court divided the marital assets in its order of December 18, 1992. Dorothy was awarded (1) $32,000 cash from the sale of the marital home; (2) the total amount of Federal and State income tax refunds for 1991, amounting to $10,893; (3) one-half of the ESIP; (4) one-half of the IRA; (5) a 1985 Lincoln Town Car; (6) one-half of all proceeds over $12,000 from the sale of the Rockford properties; (7) one-half of the monthly benefit of Robert's Com Ed Pension Plan collectible when Robert reaches 65; (8) one-half of the monthly benefit of Robert's Navy Retirement Fund based on points accumulated during the marriage; (9) $1,000 maintenance per month for 18 months; (10) health insurance, paid for by Robert and provided by his employer, for 18 months; and (11) $7,800 in attorney fees and costs. Robert was awarded (1) one-half of the ESIP; (2) one-half of the IRA; (3) the first $12,000 in proceeds from the sale of the Rockford properties, as well as one-half of any additional proceeds from the sale; (4) one-half of the monthly benefit of Robert's Pension Plan collectible when the Robert reaches 65; (5) one-half of the monthly benefit of Robert's Retirement Fund based on those points accumulated during the marriage; (6) all of the monthly benefit of Robert's Retirement Fund based on points accumulated outside the marriage; and (7) a 1990 Mercury Cougar. Household goods were divided by agreement.

On September 2, 1993, Robert moved this court to amend his notice of cross-appeal (No. 2—93—1031), to a notice of appeal and combine it with Dorothy's appeal (No. 2—93—0292). In support of his motion to amend, Robert states that his notice of cross-appeal should have carried the title "Notice of Appeal." Additionally, Robert states that his cross-appeal (No. 2—93—1031) arises from the same judgment as does Dorothy's appeal (No. 2—93—0292) and should be combined to conserve this court's time and resources.

The trial court entered three QDROs following the entry of its final judgment. A QDRO addressing the Retirement Fund was dated and filed on August 18, 1993. Robert's cross-appeal was filed on August 19, 1993; his motion to amend was filed on September 2, 1993. Separate QDROs addressing the Pension Plan and the ESIP, dated October 29, 1993, were filed on November 2, 1993. The Pension Plan QDRO set the valuation date at December 18, 1992. The ESIP QDRO set the valuation date at December 31, 1992. The trial court had originally determined that the Pension Plan and the ESIP should be divided upon the balance in the most recent account statement prior to October 8, 1992. In his brief filed on September 9, 1993, Robert disputes only the QDROs addressing the Pension Plan and the ESIP.

The record demonstrates that on August 19, 1993, it was impossible for Robert to perfect an appeal from either the Pension Plan or the ESIP QDRO. Supreme Court Rule 342(a) requires that every appellant's brief contain a copy of the judgment appealed from. (See 134 Ill. 2d R. 342(a), as amended Official Reports Advance Sheet No. 26 (December 22, 1993), R. 342(a), eff. February 1, 1994.) Robert has included a copy of neither the Pension Plan nor the ESIP QDRO with his brief. Robert asserts that

"on August 18, 1993, the trial judge ordered *** that the valuation date of the CECo retirement fund [Pension plan] and the Employee Savings and Investment Plan [ESIP] be set at December 30, 1992 for purposes of determining the benefits due to the [d]efendant at her retirement. (Transcript of August 18, 1993, page 4, line 5-22)."

The portion of the record cited by Robert reflects that the Navy Retirement Fund and the ESIP QDROs were discussed during the August 18, 1993, hearing. The Pension Plan QDRO was not mentioned. Two separate orders resulted from the August 18, 1993, hearing. The first denied Robert's motion for stay of enforcement of judgment, denied Dorothy's petition for garnishment, and reduced to judgment the outstanding cash award owed to Dorothy. The second order of August 18, 1993, is the Retirement Fund QDRO.

Robert has failed properly to perfect an appeal from either the Pension Plan or the ESIP QDRO. Robert's notice of cross-appeal is dated August 19, 1993. The notice refers to "[t]he valuation date for the [QDRO] as set by the trial court." Robert's notice does not specify which QDROs are being appealed. On August 19, 1993, only the Retirement Plan QDRO existed. Both the Pension Plan and ESIP QDROs were dated October 29, 1993, and were filed on November 2, 1993. It is impossible for a notice of appeal to perfect an appeal from

an order not yet in existence. (*Ahn Brothers, Inc. v. Buttitta* (1986), 143 Ill. App. 3d 688, 690; see 134 Ill. 2d R. 272.) Robert's notice of cross-appeal, therefore, did not perfect his appeal from either the Pension Plan or the ESIP QDROs.

■ In his response to Dorothy's objections to his motion to combine, Robert asserts that a timing dilemma mandated the filing of his cross-appeal before September 9, 1993. As justification for filing his appellant's brief on September 9, 1993, Robert cites the short interval between the trial court's order of August 18, 1993, and our final deadline for the filing of Robert's appellee brief on September 9, 1993. In light of the preceding discussion, this is insufficient to save Robert's cross-appeal of the QDROs. That portion of Robert's cross-appeal disputing the Pension Plan and the ESIP QDROs is dismissed.

■ Robert's motions to amend his cross-appeal and combine it with Dorothy's appeal are partially granted. Dorothy asserts that this court does not have jurisdiction over Robert's appeal because it was filed more than 30 days after Dorothy's last notice of appeal was filed. The order Robert appeals from was entered on August 18, 1993. Robert filed his notice of cross-appeal on August 19, 1993. This was sufficient to perfect his appeal from the August 18, 1993, order. The two appeals are sufficiently related to combine them. Robert's motions are granted as to the portion of his cross-appeal disputing the reduction of the cash award to a money judgment; his motions are denied as to the Pension Plan and the ESIP QDROs.

■ On September 22, 1993, Dorothy moved to strike Robert's brief. In support of this motion, Dorothy states that Robert has included a "new issue" without this court's permission. Because of this, Dorothy requests that we strike Robert's entire brief. For the above-stated reasons, Robert's motion to combine has been partially granted. Dorothy's motion is allowed as to those sections of Robert's brief discussing the Pension Plan and the ESIP QDROs; her motion is denied as to all other portions of Robert's brief.

■ Dorothy first contends that the amount and duration of the maintenance award were insufficient. A trial court's determination of maintenance is entitled to great deference. A maintenance award will not be set aside unless it is an abuse of discretion or against the manifest weight of the evidence. (*In re Marriage of Hochleutner* (1994), 260 Ill. App. 3d 684, 691.) An abuse of discretion occurs only when no reasonable person could find as the trial court did. (*Szesny v. Szesny* (1990), 197 Ill. App. 3d 966, 971.) A judgment is against the manifest weight of the evidence only if it appears that a contrary conclusion is clearly evident. *Usselmann v. Jansen* (1994), 257 Ill. App. 3d 978, 981.

■ The trial court determined that a period of rehabilitative maintenance was appropriate. Rehabilitative maintenance is designed to enable spouses to develop the skills necessary to support themselves. (*In re Marriage of Pearson* (1992), 236 Ill. App. 3d 337, 347.) The policy underlying rehabilitative maintenance is to sever all financial ties between the former couple in an expeditious, but just, manner. Each former spouse should be independent of the other as soon as is practicable. As a result, spouses may have to accept employment that, while not being ideal, provides for a reasonable approximation of the marital standard of living. Dorothy has started Asta. Robert is not required to provide maintenance until Asta succeeds; Robert is required to provide maintenance until Dorothy is able to support herself.

■ The trial court's maintenance award was not an abuse of discretion. A maintenance award of a specified duration must be based on evidence, not speculation. (*In re Marriage of Ryman* (1988), 172 Ill. App. 3d 599, 613.) If the record contains specific evidence of educational background, educational pursuits, and income at the time of dissolution, there is sufficient evidence to set a specified period of maintenance. (*In re Marriage of Werries* (1993), 247 Ill. App. 3d 639, 652.) In the present case, both parties testified that Dorothy had a bachelor's degree in economics and philosophy and an MBA. Dorothy has shown both skill and initiative in starting Asta. Dorothy testified that she believes Asta will eventually provide for her needs. Additionally, Dorothy possesses secretarial skills and has worked as a secretary in the past. Although these skills may be rusty, this has not prevented Dorothy from gaining a position with a temporary agency. Dorothy testified that her annual salary at Wiz was $20,000. While Dorothy worked at Wiz for only one month before being terminated, she stated that eight other people had held her position in the prior eight months. The implication is that Dorothy was terminated for reasons other than her job performance. It is reasonable, therefore, to assume that Dorothy could acquire this type of employment in the future. After reviewing the record, and in light of Dorothy's educational background, work experience, and ongoing business enterprise, we hold that a reasonable person could decide that a maintenance award of $1,000 a month for 18 months was sufficient. The trial court did not abuse its discretion in setting the award. Neither is the judgment against the manifest weight of the evidence.

■ Dorothy's second argument is that the trial court did not grant her an equitable portion of the marital assets in light of Robert's significant earning ability. A trial court's distribution of marital prop-

erty will only be reversed if there has been an abuse of discretion. (*In re Marriage of Scafuri* (1990), 203 Ill. App. 3d 385, 394.) An abuse of discretion occurs only where no reasonable person would adopt the trial court's decision. (*In re Marriage of Hanson* (1988), 170 Ill. App. 3d 298, 303.) In a dissolution proceeding, the trial court divides marital property considering all relevant factors. See 750 ILCS 5/503(d) (West 1992).

Each party disputes the percentage of the marriage's liquid assets awarded to the other. In his brief, filed on September 9, 1993, Robert claims that total liquid assets of the marital estate equalled $116,714. Taking into account the proceeds from sale of the marital home ($32,000), Federal and State income tax refunds ($10,893), one-half of the ESIP ($23,697), and one-half of the IRA ($7,213), Robert asserts that Dorothy has received $73,803 in liquid assets. These assets amount to 63% of the marital estate's liquid assets. This leaves Robert with $42,910, or 37% of the marriage's liquid assets. Robert's share includes proceeds from the sale of the Rockford properties ($12,000), one-half of the ESIP ($23,697), and one-half of the IRA ($7,213). Dorothy's reply brief paints a far different picture. Dorothy excludes the one-half interests in the ESIP and IRA. This is done because neither account can be liquidated without incurring taxes and penalties. Dorothy reduces the cash award from the sale of the marital home to reflect (what appears to be) net, rather than gross, proceeds. Dorothy also deducts Asta's outstanding debt. By Dorothy's calculations the division of liquid marital assets is approximately $7,513 for Dorothy (28%), and $19,213 for Robert (72%).

Robert presents the more accurate view of the division of liquid assets. It is inappropriate to reduce Dorothy's share of liquid assets by the outstanding debt on Asta. Dorothy may choose immediately to satisfy the outstanding debt with her share of liquid assets. This is her prerogative. How Dorothy uses her share of the assets does not change the fact that the assets were awarded to her. Additionally, the IRA and the ESIP are available to Dorothy if she chooses to use them. It may be true that Dorothy would incur taxes and penalties by drawing on these assets. As with the Asta debt, these negative consequences do not alter the fact that one-half of the IRA and the ESIP has been awarded to Dorothy.

Dorothy was also awarded $32,000 "in cash" as her share of the marital home. The trial court's final order and judgment states that the sale of the marital home "produced net proceeds of $24,620." The meaning of this phrase is ambiguous. It may refer to Dorothy's after-tax share of proceeds from the sale. The "net proceeds of $24,620" language might also refer to the actual profit realized before the

proceeds were divided. The distinction is immaterial to our decision. By the explicit language of the final order and judgment, Dorothy was awarded $32,000 "in cash." Whether Dorothy paid taxes on that $32,000 does not change this.

The trial court's distribution of marital property will not be disturbed. An appellate court must not substitute the trial court's discretion with its own. (*In re Marriage of Partyka* (1987), 158 Ill. App. 3d 545, 550.) Dorothy has a college education and a graduate degree in business. Dorothy has started her own business. She testified that Asta will eventually support her. Dorothy was awarded more than 60% of the marital assets. Dorothy will eventually receive several thousand dollars a month from Robert's Pension Plan and Retirement Fund. A reasonable person could have reached the trial court's conclusion. There was no abuse of discretion. Neither is the judgment against the manifest weight of the evidence.

■ Robert argues that the trial court erred in reducing the unpaid portion of the cash awarded to Dorothy to a money judgment. A trial court has the inherent authority to enforce its judgments. (*In re Marriage of Orlando* (1991), 218 Ill. App. 3d 312, 324.) Once a notice of appeal is filed, the trial court may not enter any order changing or modifying a judgment or its scope, or interfering with the review of that judgment. (*In re Marriage of Petramale* (1981), 102 Ill. App. 3d 1049, 1052-53.) Reducing the cash award to a money judgment merely aided Dorothy's collection efforts. The amount of the award was not altered. The trial court did not change the scope of the judgment. Appellate review was not interfered with. The trial court acted appropriately to enforce its judgment.

For the foregoing reasons, the judgment of the circuit court of Ogle County is affirmed.

Affirmed.

INGLIS, P.J., and BOWMAN, J., concur.