*In re* MARRIAGE OF SUE ELLEN CARPENTER, Petitioner-Appellant, and THOMAS CARPENTER, Respondent-Appellee.

Fifth District   No. 5—96—0079

Opinion filed February 28, 1997.

Robert E. Wells, Jr., of Pessin, Baird, Wells & Ward, of Belleville, for appellant.

John J. Kurowski and Curtis R. Bailey, both of Kurowski Law Firm, P.C., of Swansea, for appellee.

JUSTICE RARICK delivered the opinion of the court:

The 27-year marriage of Thomas and Sue Ellen Carpenter was

dissolved on April 13, 1993. Child support payments were set at $760 per month, plus 15% of any amount Thomas earned between $80,000 and $100,000. Maintenance was set at $1,415 per month, but classification as either permanent or rehabilitative was reserved. Support payments were based upon Thomas's average salary for the five previous years, which fluctuated from $48,318 in 1988 to $105,294 in 1992. Maintenance payments were based upon an average annual income of $71,624. The agreement specified that maintenance would be reviewable in May 1995 upon the request of either party.

On February 25, 1995, Thomas filed a petition seeking a reduction in child support and maintenance, alleging a substantial change in circumstances resulting from a decrease in his income. Thomas also requested that the trial court classify maintenance and either reduce, modify, or terminate future maintenance. Sue Ellen filed a counterpetition alleging that Thomas's income was substantially higher than he alleged in his financial statement, and she requested the court to increase child support and maintenance. Sue Ellen also requested that maintenance be classified as permanent and that Thomas be ordered to pay her attorney fees.

At the hearing on the petitions, Thomas testified that he earned $108,282 in 1994 and $132,670 in 1993, but that his projected 1995 income would be $40,000 to $50,000. He testified that the branch office of the mortgage company where he is employed is staffed only by himself and his future wife, and that they received the greater part of their compensation through commissions. Thomas further testified that during the parties' marriage Sue Ellen was a homemaker who primarily raised three sons.

Sue Ellen testified that since the divorce she has worked part-time at the YMCA. Since the parties' divorce she has received continuous treatment for stress and depression. Her emotional problems interfere with her current employment and cause her concern regarding any change in employment. Sue Ellen testified that she is capable only of part-time work in a supportive work environment. Her psychiatrist and her therapist both testified that her depression resulted from the breakdown of the marriage and that it interfered with her social and occupational functioning. Sue Ellen further testified that she would be unable to meet her living expenses without continued maintenance and that she has occasionally been forced to dip into her savings account in order to meet monthly expenses.

On July 11, 1995, the trial court entered an award classifying maintenance as rehabilitative and reviewable in May 1998. The order reduced child support to $550 per month and reduced mainte-

nance to $800 per month so long as Thomas's monthly income does not exceed $4,000. If it does, Thomas must pay 20% of gross income between $4,000 and $7,000, with the maximum amount of maintenance set at $1,400 per month.

On appeal, Sue Ellen argues first that the trial court's classification of the maintenance award as rehabilitative is contrary to the manifest weight of the evidence. She maintains that the award should have been classified as permanent.

■ Section 504(a) of the Illinois Marriage and Dissolution of Marriage Act (the Act) (750 ILCS 5/504(a) (West 1994)) provides that the court may award temporary or permanent maintenance, and that the amount of maintenance and the time period during which maintenance is to be paid shall be determined after the court has considered all the relevant factors, including:

"(1) the income and property of each party, including marital property apportioned and non-marital property assigned to the party seeking maintenance;

(2) the needs of each party;

(3) the present and future earning capacity of each party;

(4) any impairment of the present and future earning capacity of the party seeking maintenance due to that party devoting time to domestic duties or having foregone or delayed education, training, employment, or career opportunities due to the marriage;

(5) the time necessary to enable the party seeking maintenance to acquire appropriate education, training, and employment, and whether that party is able to support himself or herself through appropriate employment or is the custodian of a child making it appropriate that the custodian not seek employment;

(6) the standard of living established during the marriage;

(7) the duration of the marriage;

(8) the age and the physical and emotional condition of both parties;

(9) the tax consequences of the property division upon the respective economic circumstances of the parties;

(10) contributions and services by the party seeking maintenance to the education, training, career or career potential, or license of the other spouse;

(11) any valid agreement of the parties; and

(12) any other factor that the court expressly finds to be just and equitable." 750 ILCS 5/504(a) (West 1994).

■ The purpose of rehabilitative maintenance is to " 'provide incentive for the spouse receiving support to use diligence in procuring training or skills necessary to attain self-sufficiency.' " *In re Marriage of Toole*, 273 Ill. App. 3d 607, 611, 653 N.E.2d 456, 460 (1995),

quoting *In re Marriage of Chegar*, 213 Ill. App. 3d 371, 378, 571 N.E.2d 1135, 1140 (1991). This objective, however, must be balanced against a realistic appraisal of the likelihood that the spouse will be able to support herself in some reasonable approximation of the standard of living established during the marriage, especially where the marriage was of long duration and the spouse has long been absent from the labor market. *Brown v. Brown*, 241 Ill. App. 3d 305, 310, 608 N.E.2d 967, 971 (1993); *In re Marriage of Pearson*, 236 Ill. App. 3d 337, 347, 603 N.E.2d 720, 727 (1992). The policy underlying rehabilitative maintenance is to sever all financial ties between the former couple in an expeditious, but just, manner and make each spouse independent of the other as soon as practicable. *In re Marriage of Ward*, 267 Ill. App. 3d 35, 42, 641 N.E.2d 879, 894 (1994). The propriety, amount, and duration of a maintenance award are matters that lie within the sound discretion of the trial court, and its judgment therein will not be disturbed on review absent an abuse of that discretion. *In re Marriage of Hart*, 194 Ill. App. 3d 839, 851, 551 N.E.2d 737, 744 (1990). An abuse of discretion occurs where no reasonable man would take the view adopted by the trial court. *Chegar*, 213 Ill. App. 3d at 378, 571 N.E.2d at 1140. An award of rehabilitative maintenance will be found to be an abuse of discretion where the facts clearly demonstrate that a spouse is unable to support herself in a manner similar to that established during the marriage. *In re Marriage of Harlow*, 251 Ill. App. 3d 152, 159, 621 N.E.2d 929, 935 (1993), citing *In re Marriage of Carpel*, 232 Ill. App. 3d 806, 597 N.E.2d 847 (1992).

■ In the present case the evidence so strongly favors an award of permanent maintenance that an award of rehabilitative maintenance was contrary to the manifest weight of the evidence. As noted above, an award of rehabilitative maintenance is designed to allow the spouse receiving such maintenance time to become able to support herself in some reasonable approximation of the standard of living established during the marriage. During the parties' 27-year marriage, Sue Ellen devoted her time to domestic duties, foregoing any education, training, employment, or career opportunities. As a result, her earning potential and employment opportunities are severely limited. At the time the rehabilitative maintenance award was made, Sue Ellen was 51 years old. Additionally, she suffers from severe depression resulting from the breakdown of the marriage, depression which requires continued psychiatric care, including psychotropic medication and psychotherapy. Her emotional condition has further impaired her ability to seek employment opportunities that would provide a higher level of income. Indeed, both her psychiatrist and

her therapist testified that her psychological condition would interfere with her ability to function in a work environment. It is unlikely that Sue Ellen will ever be able to support herself in any reasonable approximation of the standard of living established during the marriage, and we conclude that the trial court abused its discretion in failing to order a permanent maintenance award.

Sue Ellen argues next that the trial court erred in reducing child support and maintenance payments. Section 510(a) of the Act provides that awards of maintenance and child support can be modified "upon a showing of a substantial change in circumstances." 750 ILCS 5/510(a) (West 1994). It is well recognized that a substantial change in income of the payor spouse is grounds for modifying maintenance and child support. *In re Marriage of Gleason*, 266 Ill. App. 3d 467, 639 N.E.2d 982 (1994). A trial court's determination that there has been a substantial change in circumstances such that a modification of maintenance and child support is warranted will not be disturbed on review absent an abuse of discretion. *In re Marriage of Carpel*, 232 Ill. App. 3d 806, 597 N.E.2d 847 (1992). An abuse of discretion occurs only when no reasonable person would take the view adopted by the trial court. *In re Marriage of Partney*, 212 Ill. App. 3d 586, 571 N.E.2d 266 (1991).

In the present case, Thomas introduced evidence that his annual income for 1995 would be in the range of $40,000 to $50,000, well below the level upon which maintenance and child support payments were based. Sue Ellen argues that it was an abuse of discretion for the trial court to base the new maintenance payment on Thomas's projected 1995 annual income when the payments were originally based upon a five-year average, and that the trial court ignored existing case law which adopts and advocates income averaging.

Reviewing the record, it is evident that the parties originally agreed that maintenance payments would be based upon an annual income of $71,000, a figure representing Thomas's average annual income for the previous five years. As the trial court noted, this agreement did not contemplate the significant reduction in income Thomas faced in 1995. Sue Ellen points out that for the three years prior to the present action Thomas's average annual income was $115,415, well above the $71,000 average upon which payments were based. She argues that Thomas, having previously enjoyed the "benefit" of income averaging, cannot now fairly complain about the "burden" it is placing on him. She maintains that maintenance payments were not adjusted up during those years when his income was above average and that it would be unfair to adjust them down now that Thomas's income is below average.

■■ In setting a portion of Sue Ellen's maintenance payments as a percentage of Thomas's income, the trial court stated that this was the only way to ensure her a steady stream of income given the fluctuations in Thomas's income. Percentage maintenance awards are permissible as long as the trial court considers the requisite statutory factors. See *In re Marriage of Randall*, 157 Ill. App. 3d 892, 510 N.E.2d 1153 (1987). Sue Ellen notes that in *In re Marriage of Waldschmidt*, 241 Ill. App. 3d 7, 608 N.E.2d 1299 (1993), the fourth district stated in *dicta* that percentage maintenance awards should be discontinued, as they have been in the case of child support payments, because they present difficulties in calculating the dollar amount of monthly maintenance payments. As this case clearly illustrates, however, maintenance payments based on a single year's income or an average of several years' income also present problems and inherent inequities where the payor spouse's income fluctuates from year to year. In fact, setting a lower dollar payment and coupling it with a percentage award may be the most reasonable method of handling such situations. The calculation of monthly payments presents no great difficulty, and the percentage method avoids repeated petitions for modification. We find the trial court's modification of maintenance not to be an abuse of discretion.

■ With respect to the reduction in child support payments, Sue Ellen argues that the trial court abused its discretion both by ignoring evidence of higher income during the years prior to 1995 and by failing to consider the increased expenses of the minor child.

As noted above, a trial court's decision to modify child support payments where there has been a substantial change in the payor spouse's income will not be disturbed on review absent an abuse of discretion. *In re Marriage of Burris*, 263 Ill. App. 3d 495, 636 N.E.2d 71 (1994). The record demonstrates that the trial court was aware of Thomas's income for the years prior to 1995 and of the increased expenses of the minor child. The modified award of $550 per month exceeded the statutory minimum of 20%, based upon Thomas's reduced level of income. Sue Ellen offers no evidence that Thomas's income for 1995 would not be in the $40,000 to $50,000 range. Given the unrebutted evidence of the reduction in Thomas's income, we cannot say that no reasonable person would take the view adopted by the trial court, and so we cannot find its decision to be an abuse of discretion. *Posey v. Tate*, 275 Ill. App. 3d 822, 656 N.E.2d 222 (1995).

■ Sue Ellen also contends that the formula established by the trial court to determine maintenance payments constitutes an abuse of discretion because it is subject to manipulation. She introduced no evidence, however, that any such manipulation has taken or will

take place, and we cannot find that the trial court's formula constitutes an abuse of discretion based upon speculation.

■ Finally, Sue Ellen argues that the trial court's denial of attorney fees was an abuse of discretion. She maintains that requiring her to pay her own attorney fees would place a severe economic hardship on her and that Thomas clearly has the ability to pay.

An award of attorney fees is justified where the spouse seeking the award demonstrates the financial inability to pay and the ability of the other spouse to pay. *In re Marriage of Hacker*, 239 Ill. App. 3d 658, 606 N.E.2d 648 (1992). Section 508(a) of the Act (750 ILCS 5/508(a) (West 1994)) provides that a trial court may, after considering the relative financial resources of the parties, order one spouse to pay all or part of the other's attorney fees. *In re Marriage of Walters*, 238 Ill. App. 3d 1086, 604 N.E.2d 432 (1992). Inability to pay exists where requiring the party to pay her own fees would strip her of her means of support and undermine her economic stability. *In re Marriage of Phillips*, 244 Ill. App. 3d 577, 615 N.E.2d 1165 (1993). Whether one spouse's attorney fees should be paid by the other spouse, and in what proportion, is a decision that lies within the sound discretion of the trial court and will not be disturbed on review absent an abuse of that discretion. *In re Marriage of Blazis*, 261 Ill. App. 3d 855, 634 N.E.2d 1295 (1994). The trial court abuses that discretion, however, where the evidence reveals a gross disparity in income and earning capacity and reveals the financial inability of the spouse seeking relief to pay. *In re Marriage of Frasco*, 265 Ill. App. 3d 171, 638 N.E.2d 655 (1994).

Sue Ellen sought $3,534 in attorney fees. The record demonstrates that Thomas's annual income for 1995 was to be in the $40,000 to $50,000 range, while Sue Ellen's average annual earnings were about $12,000. Given this gross disparity in income, we find that the trial court abused its discretion in failing to find that Sue Ellen was unable to pay her attorney fees and in failing to make an award.

For the foregoing reasons, the judgment of the circuit court of St. Clair County is affirmed in part and reversed in part, and this cause is remanded for further proceedings.

Affirmed in part and reversed in part; cause remanded.

KUEHN, P.J., and GOLDENHERSH, J., concur.