*In re* MARRIAGE OF SHERRY L. KEIP, Petitioner-Appellant, and MICHAEL L. KEIP, Respondent-Appellee.

Fifth District    No. 5—00—0341

Opinion filed July 18, 2002.—Rehearing denied August 22, 2002.

Larry D. Gibson, of Law Office of Larry D. Gibson, P.C., of Mt. Vernon, for appellant.

M. Keith Smith, of Law Office of M. Keith Smith, of Mt. Vernon, for appellee.

JUSTICE MELISSA CHAPMAN delivered the opinion of the court:

Sherry L. Keip appeals two portions of the final judgment dissolving her 22-year marriage to Michael L. Keip. She argues (1) that the

trial court abused its discretion in awarding a small amount of maintenance for a short, fixed duration and (2) that the decision of the trial court specifying that each party would be responsible for his or her own attorney fees was error. We reverse the decision of the trial court regarding the maintenance award and modify both the amount and the duration. However, we affirm the portion of the decision involving the attorney fees.

## I. BACKGROUND

Sherry and Michael Keip were married on December 24, 1977, and divorced on May 4, 2000. During their marriage, the couple had four children. At the time of the divorce, Sherry and Michael were each 43 years old and in reasonably good health for their age. Three of the children were minors, ages 4, 9, and 16, and the eldest child, who was 21, also still resided at home at the time. Under the dissolution decree, the parties got joint custody of the three minor children, although Sherry was awarded physical custody. The court ordered Michael to pay child support of $1,780 per month under the statutory minimum guidelines and maintenance of $400 per month for a period of 12 months. With regard to the distribution of property, the trial court adopted Michael's proposed distribution and awarded Sherry assets in the amount of $86,401.92 and debts in the amount of $74,191.13. The court awarded Michael assets in the amount of $47,594.55 and debts in the amount of $72,572.95. Sherry therefore had a positive net worth of $12,210.79, and Michael had a negative net worth of $24,978.40.

Michael works as the finance manager at a car dealership. He has been employed there for 15 years and works between 65 and 70 hours per week. Michael's income fluctuates with the economy because a part of his income is based on commissions; however, his income has steadily risen in recent years. His tax returns indicate that his income in 1997 was $81,330, his income in 1998 was $96,630, and his income in 1999 was $100,489. Additionally, his employer provides him with a vehicle to use at no cost to him besides fuel.

Sherry has obtained her GED certificate and has also obtained a teacher's aide certificate. She works as a cook's helper at a local grade school, and she has done so for 13 years. Her hours are approximately the same as her children's school schedule—from 7 a.m. to 3:15 p.m. Also, Sherry does not work during the summer months. Her income was $12,243 in 1997, $13,255 in 1998, and $14,001 in 1999.

## II. ANALYSIS

### A. Maintenance

■ One goal of maintenance is to terminate the financial interde-

pendence of former spouses, if possible. *In re Marriage of Lee*, 246 Ill. App. 3d 628, 646, 615 N.E.2d 1314, 1327 (1993). Another goal is to allow an ex-spouse the time and resources to achieve self-sufficiency. *In re Marriage of Kusper*, 195 Ill. App. 3d 494, 500, 552 N.E.2d 1023, 1026 (1990). A trial court's determination of maintenance will not be altered absent an abuse of discretion or a finding that the award is against the manifest weight of the evidence. *In re Marriage of Marcello*, 247 Ill. App. 3d 304, 311, 617 N.E.2d 289, 294 (1993). We conclude that the trial court abused its discretion in failing to award Sherry sufficient maintenance for a sufficient period of time.

■ According to section 504(a) of the Illinois Marriage and Dissolution of Marriage Act (Act), a trial court may grant maintenance to either spouse in such an amount and for such a period of time that the court deems just after considering all relevant factors. 750 ILCS 5/504(a) (West 2000). First, a court must consider the resources and needs of each party. 750 ILCS 5/504(a)(1), (a)(2) (West 2000). Next, a court must look at each party's present and future earning capacity and any impairment of said earning capacity because of time devoted to domestic duties or forgone or delayed education, training, employment, or career opportunities due to the marriage. 750 ILCS 5/504(a)(3), (a)(4) (West 2000). Also along those lines, a court must consider the amount of time needed to acquire education, training, and employment and whether he or she is able to engage in appropriate employment or is the custodian of a child, making it appropriate for that party not to seek employment. 750 ILCS 5/504(a)(5) (West 2000). A court also must look at the standard of living established during the marriage and the duration of the marriage. 750 ILCS 5/504(a)(6), (a)(7) (West 2000). Other factors include the parties' ages and their physical and emotional conditions, any tax consequences of the division of property, any contributions made to the education or career of the other spouse, and any valid agreement between the parties. 750 ILCS 5/504(a)(8) through (a)(11) (West 2000). Lastly, a court may also consider any other factor that the court expressly finds to be just and equitable. 750 ILCS 5/504(a)(12) (West 2000).

The trial judge stated in the final judgment that he had considered the statutory factors related to an award of maintenance. However, neither in his final comments nor in his final judgment are there any findings or other indications that these factors were in fact a consideration, beyond the comment regarding undisputed evidence that Sherry worked nine months out of the year and Michael worked 60 to 70 hours per week. The court's only recognition of Sherry's need was a one-year award of $400-per-month maintenance for the stated purpose of the youngest child's day care. There is no evidence that the

award of $400-per-month maintenance earmarked for day care will in any way allow Sherry to achieve self-sufficiency at the expiration of that year.

■ The court should have considered Sherry's needs in determining the maintenance award. The court ordered Michael to pay Sherry $1,780-per-month child support, based on the statutory minimum guidelines and Michael's average annual income of $98,000. Based on the court's child support determination, Michael's net monthly income totaled $5,560. Therefore, Michael's net monthly income after the child support obligation is $3,780. The stated purpose of child support is "for the reasonable and necessary physical, mental[,] and emotional health needs of the child." 750 ILCS 5/505(a) (West 2000). The court may deviate from these guidelines only if, after considering evidence on all the relevant factors, it finds a reason, and if the court orders a lower award, it must make express findings to support its reason. 750 ILCS 5/505(a)(2) (West 2000). Because, after its consideration of the evidence presented on all relevant factors, the court did not find a reason to deviate from the minimum guidelines, this court assumes that the trial court made a determination that $1,780 per month is reasonable and necessary for the support of the three minor children. Child support is for the benefit of the children, not a parent (see *In re Marriage of Pihaly*, 258 Ill. App. 3d 851, 856, 627 N.E.2d 1297, 1302 (1994)), and thus we believe that it should not be considered as a substitute for maintenance.

■ The reasonable needs of the party seeking maintenance are to be measured by the standard of living the parties enjoyed during the marriage. *In re Marriage of Simmons*, 87 Ill. App. 3d 651, 658, 409 N.E.2d 321, 327 (1980). Because, in reality, two households are more costly than one, most parties are not able to afford the same standard of living they enjoyed when living together. In those circumstances, the court must apportion the deficit, balancing the parties' claims to their remaining incomes. See *In re Marriage of Simmons*, 87 Ill. App. 3d at 661, 409 N.E.2d at 328. With her undisputed monthly net income of $1,214, Sherry's expenses clearly exceed her income. The monthly installment payments for her mortgage, the real estate taxes, and the minimum payments on credit card balances are about equal to her income. Sherry is not able to meet her needs in any marginal way, let alone approximate the comfortable lifestyle established during the marriage, when the couple's combined income exceeded six figures. Her needs are clearly not going to be met under the current setup.

■ At a minimum, it is clear that Sherry's present earning capacity has been impaired due to her domestic duties, as reflected by the significant disparity in the incomes of the parties. In 1999, Sherry

earned less than $15,000, while Michael earned more than $100,000 in the same year. Although it is true that neither party has an educational degree beyond high school, Michael has developed marketable skills while Sherry has not. Michael has been employed for 15 years as a finance manager for a car dealership. Sherry, who has obtained her GED and a teacher's aide certificate, has been employed as a cook's helper for 13 years.

It is also clear that the court failed to take into account that Sherry is and has been the primary caretaker for the parties' four children over a 21-year span. Sherry's work as a cook's helper began when her eldest child was in grade school. This position has been well-suited and appropriate to the family's schedule, permitting Sherry to be at home with the children whenever they were not in school, including the summer, thus also saving money on child-care expenses. This work schedule reflected a family choice that the parties preferred that a parent be the homemaker and caretaker when the children were not in school. See *In re Marriage of Hensley*, 210 Ill. App. 3d 1043, 1052, 569 N.E.2d 1097, 1102 (1991). She should not now be penalized for this joint decision.

Both parties' monthly expense affidavits included expenses that the trial court allocated to the other party. After this is taken into consideration and after the appropriate deductions, it appears that Sherry's monthly expenses, including those of the three minor children she retains custody of, are approximately $4,000. (Specifically, $4,385.67 in stated expenses minus the $400 mortgage payment for the residence awarded to Michael with the debt.) Sherry's monthly net income of $1,214, plus the child support of $1,780, leaves her approximately $1,000 short of the estimated $4,000 figure. Michael, on the other hand, estimated his monthly expenses alone to be $4,253.23, despite the fact that he was allocated less debt. (As noted earlier, $72,572.95 of debt went to Michael and $74,191.13 went to Sherry.) After the deduction of approximately $1,200 of debts that are not Michael's obligation—$400 in child-care expenses, $200 for clothing for the children, $100 for beauty and barbershops for the children, along with the $500 mortgage on the residence awarded to Sherry with the debt—a more accurate monthly expense estimate for Michael is $3,053.23. After the $1,780 child support payment, Michael is left with $3,780 per month out of his $5,560 net income.

One key monthly-expense consideration is transportation. Michael has the free use of a vehicle as a fringe benefit of his employment; this includes insurance, all repairs, and maintenance. His only auto expense is gas. Sherry's vehicle, which is used to transport herself and the children, is a 1988 Ford Aerostar van with more than 100,000

miles on it and a rebuilt engine. It is valued at $500. She estimates her monthly auto expenses, including gasoline, repairs, and maintenance, at $254 per month.

This court is aware that Sherry has been awarded an unequal share of the marital assets. However, her primary asset is the marital residence, where she and the children reside. The house has a substantial mortgage, which is also her obligation. Sherry's other assets are a retirement fund valued at $5,711.92 (which she would have to quit her employment in order to obtain) and $3,190 worth of household contents and property consisting of used furniture and her car. It is important to note that none of these assets are income-producing. Illinois law is clear that one is not required to liquidate assets in order to generate income to live on. *In re Marriage of Emery*, 179 Ill. App. 3d 744, 750-51, 534 N.E.2d 1014, 1018 (1989). There simply are no other additional assets to award Sherry in lieu of maintenance.

After considering both the testimony at the trial and the record regarding the factors in section 504 of the Act (750 ILCS 5/504 (West 2000)), we do not believe that the trial court awarded Sherry an adequate amount of maintenance. We therefore modify the maintenance award to $800 per month. This award would strike a balance between the reasonable needs of the parties and the ability of Michael to pay, and it would also take into consideration the other enumerated statutory factors.

Further, we believe that it was error for the court to limit the maintenance to one year without review. We find nothing in the record to support such an arbitrary cutoff. The record was void of any information to arrive at an expectation that Sherry's income would be any greater by the end-of-the-year time limit. The court cannot merely speculate on when, or if, Sherry will become self-sufficient in a manner approaching the standard of living the couple enjoyed during the marriage. See *In re Marriage of Ward*, 267 Ill. App. 3d 35, 42, 641 N.E.2d 879, 884 (1994). While there is no formula prescribing what a "just" time period is or whether an award should be temporary or permanent, all the relevant factors here indicate a case for permanent maintenance. Examples of such evidence in the record that would support such an award would include educational background, educational pursuits, and income at the time of the dissolution. See *In re Marriage of Ward*, 267 Ill. App. 3d at 42, 641 N.E.2d at 884.

By ignoring the contributions Sherry made as a homemaker and caretaker for the children, the court also ignored the policies underlying an award of maintenance. This valuable contribution of 22 years of marital service should not now be punished; rather, it should be

viewed in the totality of the agreed-to marriage partnership. As the court in *In re Marriage of Kerber*, 215 Ill. App. 3d 248, 253-54, 574 N.E.2d 830, 833 (1991), noted when quoting from the special concurrence in *In re Marriage of Hart*, 194 Ill. App. 3d 839, 853, 551 N.E.2d 737, 745 (1990) (Steigmann, J., specially concurring):

> " 'Marriage is a partnership, not only morally, but financially. Spouses are coequals, and homemaker services must be recognized as significant when the economic incidents of divorce are determined. Petitioner should not be penalized for having performed her assignment under the agreed-upon division of labor within the family. It is inequitable upon dissolution to saddle petitioner with the burden of her reduced earning potential and to allow respondent to continue in the advantageous position he reached through their joint efforts.' "

Sherry's current employment, which matches the children's school schedule, is clearly appropriate for the custodian of school-age children. In fact, Sherry even described her job as "perfect for the children." Although Sherry holds a teacher's aide certificate, there was no evidence submitted that there were any employment opportunities available to her in this field or that she could earn more money as a teacher's aide. There was simply no evidence at the trial that there was any other more suitable employment for Sherry, other than her stated desire to obtain some training toward a two-year associate degree (which would also permit her to work in a school setting). This desire to better herself is commendable and is in line with the rehabilitative goal of financial independence following divorce. However, even with additional training or education, the court must take into consideration the realistic likelihood that Sherry will always have a "reduced earning potential." See *In re Marriage of Kerber*, 215 Ill. App. 3d at 253-54, 574 N.E.2d at 833.

"The spouse need not be reduced to poverty before maintenance is appropriate." *In re Marriage of Martin*, 223 Ill. App. 3d 855, 860, 585 N.E.2d 1158, 1162 (1992). A balance must be achieved between providing maintenance as an incentive to Sherry to attempt to achieve self-sufficiency and a "realistic appraisal" of whether such self-sufficiency is even possible under these circumstances. See *In re Marriage of Carpenter*, 286 Ill. App. 3d 969, 972-73, 677 N.E.2d 463, 466-67 (1997). Here, there is an $85,000 disparity between the parties' incomes. It is unlikely that even with additional training, at this stage in her life, Sherry will ever earn a salary that will meet her needs commensurate with the standard of living she had while married to Michael. "[W]hen the facts make it clear that one spouse is unable to support herself in the manner in which [the parties] lived during the marriage, then it is

an abuse of discretion to award only rehabilitative maintenance." (Emphasis omitted.) *In re Marriage of Carpel*, 232 Ill. App. 3d 806, 828, 597 N.E.2d 847, 863 (1992). Despite the great deference we pay to a trial court's determination of maintenance, we conclude that the court did abuse its discretion in requiring that the maintenance terminate after only one year. We therefore also modify the award of maintenance, making it permanent.

### B. Attorney Fees

■ Generally, attorney fees are the responsibility of the party for whom the services were rendered. *In re Marriage of McGuire*, 305 Ill. App. 3d 474, 479, 712 N.E.2d 411, 414 (1999). However, section 508(a)(1) of the Act specifies that a trial court may order a party to pay all or a part of the other party's attorney fees and costs incurred in maintaining an action. 750 ILCS 5/508(a)(1) (West 2000).

Section 503(j), which sets forth the procedures to be followed in presenting and hearing issues of attorney fees in dissolution cases, codifies the standard criteria courts had traditionally applied in determining whether to award attorney fees and in what proportion. 750 ILCS 5/503(j) (West 2000). Specifically, a court should consider the allocation of assets and liabilities between the parties, any maintenance awarded, and the relative earning abilities of each of the parties. *In re Marriage of McGuire*, 305 Ill. App. 3d at 479, 712 N.E.2d at 414. The trial court's determination of whether one spouse should pay the attorney fees of the other and in what proportion lies within the sound discretion of the trial court and will not be disturbed absent an abuse of that discretion. *In re Marriage of McGuire*, 305 Ill. App. 3d at 479, 712 N.E.2d at 414.

Sherry argues that the trial court erred in failing to require Michael to pay all or a portion of her attorney fees. A party seeking an award of attorney fees must show that he or she is unable to pay the fees while the other party is able to do so. *In re Marriage of McGuire*, 305 Ill. App. 3d at 479, 712 N.E.2d at 414. The record shows, however, that Sherry did not meet her burden to show that she was unable to pay her attorney fees or that Michael was able to pay. In her petition for contribution, Sherry's sole argument was that Michael was in a superior position to pay her attorney fees because he had "the ability to continue to earn in his previous capacity." She does not provide any support to show how Michael would be able to pay her attorney fees. In fact, neither Sherry nor Michael appears to be in a strong financial position subsequent to this divorce, and each will probably struggle to pay their attorneys.

Sherry also failed to show that she was unable to pay the fees

herself. She needed to show that paying her attorney fees would undermine her economic stability, for example, by requiring that she deplete part of her principal to make the payments. We find no abuse of discretion in the trial court's decision denying Sherry's petition for contribution to attorney fees.

### III. CONCLUSION

Based on the forgoing, we conclude that the trial court abused its discretion in determining the amount and duration of maintenance awarded to Sherry. We therefore modify the final judgment pursuant to our authority under Supreme Court Rule 366(a)(5) (155 Ill. 2d R. 366(a)(5)) by raising the amount of maintenance to $800 per month and making it permanent. We affirm the trial court's decision, however, with regard to attorney fees.

Affirmed as modified.

GOLDENHERSH and HOPKINS, JJ., concur.