2016 IL App (3d) 150105

Opinion filed February 3, 2016

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

A.D., 2016

| | | |
|---|---|---|
| *In re* MARRIAGE OF | ) | Appeal from the Circuit Court |
| | ) | of the 21st Judicial Circuit, |
| JAMES T. ADAMSON, | ) | Kankakee County, Illinois. |
| | ) | |
| Petitioner-Appellee, | ) | |
| | ) | Appeal No. 3-15-0105 |
| and | ) | Circuit No. 06-D-175 |
| | ) | |
| JENNIFER ADAMSON, | ) | |
| | ) | Honorable |
| Respondent-Appellant. | ) | Michael D. Kramer, |
| | ) | Judge, Presiding. |

PRESIDING JUSTICE O'BRIEN delivered the judgment of the court, with opinion.
Justices Lytton and McDade concurred in the judgment and opinion.

**OPINION**

¶ 1      The respondent former wife, Jennifer Adamson (mother), appeals from the denial of her

motion to modify visitation and parenting time in postjudgment dissolution of marriage

proceedings.

¶ 2                                          FACTS

¶ 3      A judgment for the dissolution of the marriage of the respondent and the petitioner

former husband, James Adamson (father), was entered on October 30, 2007.  The judgment

incorporated a joint parenting agreement, which granted both parties joint legal and physical custody of the minor children, who were approximately seven and two years old at the time. The judgment and the joint parenting agreement made specific provisions for the parenting time of each party. Specifically, during the school year, the parenting time was allocated on the basis of a three-week rotation. In weeks one and two, the father was to have parenting time from Friday afternoon until Monday morning. The father was also granted parenting time for three hours on Wednesday afternoons in weeks one and two. In week three, the father was to have the children from Wednesday afternoon until Thursday morning. The father was also entitled to two 72-hour "super daddy days" a year, one each school semester, which were vacation increments in addition to his other parenting time. The mother had her parenting time during all the times not mentioned, and the children went to school in the district where the mother resided. During the summer, the parties were to equally divide the summer vacation in one-week increments, and the winter vacation was to be equally divided. Holidays were also equally divided.

¶ 4 On July 22, 2013, the mother filed a petition to modify visitation and parenting time. The petition asked that the parenting time be modified partly because the mother had secured a job and both the children were now in school full time. The mother sought a specific visitation schedule, such as alternate weekends, the elimination of the "super daddy days," and the addition of Easter to the holiday schedule. On October 16, 2013, the father filed a rule to show cause, alleging that the mother was not complying with the visitation schedule, and a motion to modify parenting times, seeking increased parenting time and reduced exchanges between the parties. However, the father withdrew that petition, preferring to retain the established parenting agreement.

2

¶ 5   The circuit court conducted a hearing and heard testimony from both parties and the older child.  The older child, who was now 14 years old, testified that he was closer to his mother.  He testified that his father yelled a lot and had done mean things, like intentionally bringing uniform jerseys and shoes late to a game and preferring the older child to have sleepovers at the father's house rather than a friend's house.  The child testified that his father's girlfriend was mean, but she had not been at his father's house during visitation hours for a few months.  Both the child and the mother testified that they would prefer a visitation schedule where the children were with the father every other weekend and overnight on Wednesdays, with no more "super daddy days."

¶ 6   The father testified that he scheduled his work hours around his parenting schedule.  He also testified that he was taking a break from his girlfriend after she said something to the older child.  The father permitted the older child to stay overnight at friends' houses on several occasions, and he allowed friends to stay over at his home.  The last time he exercised his "super daddy days" it was to extend President's Day weekend, during which time the father and the children traveled to Colorado.

¶ 7   The circuit court denied the petition.  The court found that it could modify a parent's time with a minor child pursuant to section 607(c) of the Illinois Marriage and Dissolution of Marriage Act (Act) (750 ILCS 5/607(c) (West 2012)) when it served the best interest of the minor, and no substantial change in circumstances since the last modification needed to be proven.  However, the circuit court concluded that the mother failed to prove by a preponderance of the evidence that a modification of the parenting time schedule was in the best interest of the children.  With respect to the rule to show cause, the circuit court did not find the mother in contempt but did order make-up times for the father's missed parenting times on various Wednesdays.  The mother appealed the order denying her petition to modify.

¶ 8                                    ANALYSIS

¶ 9          The mother argues that the circuit court erred in denying her petition to modify visitation

and parenting time, contending that the circuit court's decision was against the manifest weight

of the evidence because the evidence at the hearing suggested that some modification to the

parenting schedule was necessary and the circuit court did not give any weight to the wishes of

the older child.  The father argues that the mother failed to identify a parenting-time modification

that would be in the better interest of the children.  Additionally, the father contends that the

circuit court's failure to specifically discuss each best interest factor did not indicate that the

factors were not considered, and the older child's wishes were not in his own best interest.

¶ 10         Section 607(c) of the Act provides that a "court may modify an order granting or denying

visitation rights of a parent whenever modification would serve the best interests of the child."

750 ILCS 5/607(c) (West 2012).  As the circuit court correctly noted, the modification provision

does not require proof of a substantial change of circumstance, but only requires the court to

consider whether a modification of a visitation order would be in the minor's best interest.  In

determining the best interests of a child, the circuit court considers the factors listed in section

602(a) of the Act.  750 ILCS 5/602(a) (West 2012); *DeBilio v. Rodgers*, 337 Ill. App. 3d 614,

617 (2002).  On appeal, we will not reverse a circuit court's decision regarding the modification

of visitation unless it was against the manifest weight of the evidence or an abuse of discretion.

*Heldebrandt v. Heldebrandt*, 251 Ill. App. 3d 950, 954 (1993).

¶ 11         The mother argues that the most relevant factors in this case were the wishes of the

mother, the wishes of the older child, and the interaction and interrelationship of the older child

with his parents.  See 750 ILCS 5/602(a)(1), (2), (3) (West 2012).  The mother contends that the

circuit court failed to address any of the factors in rendering its decision.  However, it is clear

4

that the circuit court considered the evidence presented in favor of modification. The circuit court acknowledged the mother's desire for more quality time with the children, in addition to the father's desire to maintain his parenting time. Although the circuit court did not specifically mention the older child's testimony regarding the father, it was part of the evidence before the court.

¶ 12        Clearly, a mature child's preference as to custody should be given considerable weight when it is based on sound reasoning. *Shoff v. Shoff*, 179 Ill. App. 3d 178, 185 (1989) (citing *In re Marriage of Leff*, 148 Ill. App. 3d 792, 810 (1986)). However, a court is not precluded from finding that the child's preference is not in the child's best interest. *Id.* In this case, the older child testified that a year earlier, he wanted more time with his father, but he had recently changed his mind because of the mean and bad things his father had done. However, when asked to describe those things to the court, the older child only described misunderstandings and normal teenage/parent behavior. For example, the child testified that his father would never give him his sports uniform in time for a game and would forget soccer shoes on purpose. When the father was asked to clarify this, he testified that he never purposely forgot to bring sports equipment. The father did recollect a time when he laid the child's uniform out on the front porch for the mother to pick up and she failed to pick it up. The older child also testified that his father never let him have sleepovers at a friend's house. However, when asked to clarify, the child testified that now that his father had moved, he was allowed to stay over at friends' houses, but his father preferred, and allowed, his friends to stay over at the father's house. The older child's testimony regarding the visitation schedule that he preferred was almost identical to that requested by the mother. When asked why he no longer wanted his father to have "super daddy days," the older child testified that it was unfair to his mother.

5

¶ 13   Based upon the evidence before the circuit court, we find that the circuit court's conclusion that a modification of the parenting time agreement was not in the children's best interest was not against the manifest weight of the evidence nor an abuse of discretion.

¶ 14                                                  CONCLUSION

¶ 15   The judgment of the circuit court of Kankakee County is affirmed.

¶ 16   Affirmed.