# Illinois Official Reports

## Appellate Court

---

*In re Marriage of Tworek*, 2017 IL App (3d) 160188

---

| | |
|---|---|
| Appellate Court Caption | *In re* MARRIAGE OF AMY L. TWOREK, Petitioner-Appellee, and DAVID J. TWOREK, Respondent-Appellant. |
| District & No. | Third District<br>Docket No. 3-16-0188 |
| Filed | October 11, 2017 |
| Decision Under Review | Appeal from the Circuit Court of Will County, No. 12-D-2411; the Hon. Victoria M. Kennison, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Gregory B. Jumbeck and Timothy J. Reeb, of Reich, Jumbeck & Stole, LLP, of Joliet, for appellant.<br><br>Mark R. Farrow and Rebecca A. Krawczykowski, of Fay, Farrow & Associates, P.C., for appellee. |
| Panel | JUSTICE O'BRIEN delivered the judgment of the court, with opinion.<br>Justices McDade and Wright concurred in the judgment and opinion. |

**OPINION**

¶ 1     The respondent father appealed from trial court orders denying his motion to modify a visitation notice provision in a judgment for dissolution of marriage, denying his motion to deviate downward in child support, and granting the petitioner mother's motion for contribution to attorney fees.

¶ 2                                              FACTS

¶ 3     The respondent father, David Tworek, and the petitioner mother, Amy Tworek, were married on November 1, 2003. They had two children during the marriage. The parties' judgment for dissolution of marriage was entered on December 19, 2014, which incorporated the parties' marital settlement agreement and parenting agreement. The judgment provided that the mother was to have residential custody of both children, subject to the father's parenting time. The father was to pay child support in the amount of $1044 per month and 28% of any net income over $14,375 per quarter, plus half of health care, day care, school, and extracurricular fees. There was a notice provision in the judgment, which provided that the father had to give five days' notice of any changes or cancellations, absent an emergency, or forfeit his visitation. There was also a provision that allowed each party 14 days from the entry of the judgment leave to file a petition for contribution to attorney fees.

¶ 4     On December 31, 2014, the mother filed a petition for contribution to attorney fees, arguing that she lacked the financial resources to pay her own costs and fees. The affidavit attached to the petition showed fees totaling $72,788.75 and costs of $2074.15, with a remaining balance of $33,182.92.

¶ 5     On February 2, 2015, the father filed a motion to change the five-day visitation notice provision, arguing that he could not give such notice due to last minute changes in his work schedule and that the notice provision was contrary to the best interests of the children. He requested that the notice be shortened.

¶ 6     At the hearing on the visitation notice motion, the father explained that the nature of his job included last minute notices of meetings. The father testified that the meetings were client meetings, generally after-hours social events to foster new business. The trial court denied the motion to the extent that it sought a shorter notice period, noting that the five-day provision was an agreement between the parties. The trial court found that there had not been a substantial change in the circumstances since the entry of the agreed judgment that would warrant a change in the notice requirement. The trial court modified the notice provision to the extent that it defined "emergency," finding that it was in the best interests of the children to define emergency. The trial court noted that the father had been at his current job long enough to get beyond any probationary period and establish communication with his employer regarding his visitation obligations with his children.

¶ 7     The father filed a motion to reconsider, arguing that the trial court incorrectly applied the law and should have applied the best interest factors. In denying the motion to reconsider, the trial court found that the mother was credible, the father was not credible, and the notice provision was necessary because the father was abusing the visitation notice in his attempt to be controlling and manipulative.

¶ 8    At the hearing on the contribution petition, held in August 2015, the mother submitted a financial disclosure statement dated May 29, 2015. She testified that the financial disclosure accurately reflected her financial condition at the time of the divorce. She had an annual income of approximately $66,000 and the father had an annual income of $233,000. The trial court found that, based on the financial information at the time of the hearing, the mother lacked the ability to pay all of her attorney fees and the father had the ability to pay. The trial court considered the reasonableness of the fees, the marital property settlement, and the parties' present and future earning abilities, and also considered the unnecessary increase in the cost of the litigation caused by the father's actions. Based on those findings, the trial court ordered the father to contribute $24,000 to the mother's fees.

¶ 9    On June 18, 2015, the father filed a motion to deviate downward in statutory child support, arguing that his commissions were greatly increased, so that the amount of child support paid to the mother caused her to be unjustly enriched. The trial court denied the motion. The father appealed the denial of his motion to modify the visitation notice provision, the denial of his motion to deviate downward in child support, and the grant of the mother's motion for contribution to attorney fees.

¶ 10                                 ANALYSIS
¶ 11                            I. Visitation Notice
¶ 12    With respect to the agreed visitation notice, the father contends that the appropriate standard that should have been applied to his motion to modify was the best interest of the child standard not a substantial change in circumstances. The mother argues that the trial court did consider the best interests of the children.

¶ 13    Section 607 of the Illinois Marriage and Dissolution of Marriage Act (Act), prior to its amendment in 2016, provided that a "court may modify an order granting or denying visitation rights of a parent whenever modification would serve the best interest of the child." 750 ILCS 5/607(c) (West 2014). In determining the best interests of a child, the trial court considers the factors listed in section 602(a) of the Act. 750 ILCS 5/602(a) (West 2014).

¶ 14    Generally, agreed orders are not judicial determinations of the parties' rights but rather agreements between the parties and are subject to the rules of contract interpretation. *In re Marriage of Kolessar*, 2012 IL App (1st) 102448, ¶ 19. But, in marriage dissolution proceedings, while "property disposition agreements between spouses are binding upon the court, unless unconscionable *** the court is not bound by agreements providing for the support, custody, and visitation of the children." *Blisset v. Blisset*, 123 Ill. 2d 161, 167 (1988). Since this was an agreement regarding visitation, the modification should have been granted if it served the best interests of the children. The reviewing court is not bound to accept the reasons given by the trial court and the judgment may be sustained upon any ground warranted, regardless of whether it was relied on by the trial court and regardless of whether the reason given by the trial court was correct. *Material Service Corp. v. Department of Revenue*, 98 Ill. 2d 382, 387 (1983). We will not reverse a trial court's decision regarding the modification of visitation unless it was against the manifest weight of the evidence or an abuse of discretion. *In re Marriage of Adamson*, 2016 IL App (3d) 150105, ¶ 10.

¶ 15    It is clear from the record that the trial court, although it did not specifically cite the statutory factors, did consider the best interests of the children in making its decision. The trial court considered the guardian *ad litem*'s recommendation regarding the visitation notice and

the need for it in terms of the parties' relationship with each other and with the children. The trial court also noted that it was in the best interests of the children to define what would constitute an emergency. The father sought to change the visitation notice provision on the basis of last-minute changes to his work schedule. However, his testimony established that the last-minute changes were to attend social events with customers. While the trial court recognized the importance of the father's job duties, it also recognized the importance of a parent communicating with his employer and making sacrifices so that he could balance his employment with his visitation obligations with his children. Due to the father's history of dictating and controlling visitation, the trial court concluded that the five-day notice provision was in the best interests of the children. We affirm the trial court's decision regarding the modification of visitation, finding that it was not against the manifest weight of the evidence or an abuse of discretion.

¶ 16                                    II. Contribution to Attorney Fees

¶ 17    The father contends that the trial court abused its discretion in ordering him to contribute to the mother's attorney fees because there was no evidence of the mother's financial circumstances at the time of the hearing. The mother contends that the trial court did consider the mother's financial circumstances at the time of the hearing and its decision to order contribution was not an abuse of discretion. The mother also argues that the father waived any issues regarding the reasonableness or necessity of the fees by not raising those issues on appeal.

¶ 18    A trial court may order either party to pay the reasonable attorney fees of his spouse. 750 ILCS 5/508(a) (West 2014). Section 508(a) of the Act (750 ILCS 5/508(a) (West 2014)) directs that contribution to attorney fees may be ordered from an opposing party in accord with section 503(j) of the Act (750 ILCS 5/503(j) (West 2014)). Pursuant to section 503(j)(2) of the Act, in deciding the petition for contribution, the trial court must consider the factors for property distribution set forth in section 503 (750 ILCS 5/503 (West 2014)) and for maintenance set forth in section 504 (750 ILCS 5/504 (West 2014)) of the Act. 750 ILCS 5/503(j)(2) (West 2014). In determining an award of attorney fees, the trial court considers the relative financial circumstances of the parties, including the allocation of assets and liabilities, maintenance, and the parties' relative earning abilities. *In re Marriage of Anderson*, 2015 IL App (3d) 140257, ¶ 12. The proper time frame for disclosure is the time of the hearing, not the date of the dissolution. *Id.* ¶ 23. We review a trial court's ruling regarding contribution for attorney fees in a dissolution proceeding for an abuse of discretion. *In re Marriage of Keip*, 332 Ill. App. 3d 876, 884 (2002).

¶ 19    The father argues that the mother's disclosure was not sufficient because it was filed on May 29, 2015, for a hearing held on August 3 and 4, 2015. At the hearing, the mother testified as to her current earnings and to the amounts currently in her savings and checking accounts. She also testified as to some of the differences between the date of the disclosure and the date of the hearing, including the fact that she had reported $1483 for child care on the disclosure, but the father was subsequently ordered to pay 50% of that cost. The trial court noted that the time frame it was looking at was at the time of the hearing. We find that there was no abuse of discretion in relying on a disclosure filed within two months prior to the hearing, along with testimony at the hearing regarding the mother's current financial circumstances. In any event, the father failed to object to the admission of the May 29, 2015, affidavit in the trial court, so he

waived the right to challenge it on appeal. *American Chartered Bank v. USMDS, Inc.*, 2013 IL App (3d) 120397, ¶ 13.

¶ 20     As the mother points out, the father did not make any argument regarding the reasonableness or necessity of the fee amount in his appellate brief, so those issues are also waived. *Id.*

¶ 21                                    III. Child Support

¶ 22     Lastly, the father contends that the trial court abused its discretion in refusing to deviate downward in child support. The mother contends the father did not sustain his burden of producing evidence to compel a deviation. A trial court's ruling on child support will not be overturned unless it is against the manifest weight of the evidence, indicating an abuse of discretion. *In re Marriage of Olsen*, 229 Ill. App. 3d 107, 116 (1992).

¶ 23     The statutory guideline for the support of two children is 28% of the supporting party's net income. 750 ILCS 5/505(a) (West 2014). The guideline creates a rebuttable presumption that the support is appropriate, and the proponent of a deviation has the burden of producing evidence that compels a deviation. *In re Marriage of Hill*, 2015 IL App (2d) 140345, ¶ 29. A trial court is justified in awarding child support below the guideline amount where the parties' incomes are more than sufficient to provide for the reasonable needs of the parties' children, but it is not required to do so. *In re Marriage of Singleteary*, 293 Ill. App. 3d 25, 36 (1997). When dealing with a parent who has a high income, the trial court must balance the concerns that (1) a child support award should not be a windfall and (2) the standard of living that the children would have enjoyed absent the dissolution should be maintained. *Id.*

¶ 24     There was significant evidence regarding the parties' income, standard of living during the marriage, and standard of living after the marriage. The father testified that during the marriage his highest income was approximately $96,000. At that time, they lived a simple lifestyle in a modest home, and their furniture was mostly gifted to them or refurbished used furniture. However, they did take vacations. The father testified that his gross income in 2015 was $207,000, and he believed that 28% of that amount greatly exceeded the children's expenses. At the time of the hearing, the father lived in a shared house and was saving money for a home. He replaced his car in April 2015, paying for a new Acadia with almost $41,000 in cash. He had accumulated $35,000 in his savings account since the divorce.

¶ 25     The mother testified that her annual salary at the time of the hearing was $75,000. She had not made any contributions to her retirement fund since the entry of the dissolution of marriage of judgment, and she had minimal savings. She continued to spend money frugally, as she had during the marriage, but she had not been able to afford some maintenance on her home.

¶ 26     The trial court considered the financial resources of each parent, the needs of the children, and the standard of living the parties enjoyed during the marriage and found that the downward deviation was not warranted. The trial court found that the father intentionally reduced his expenses in his January 2016 expense affidavit in an attempt to support his claim that he was living frugally, while he was purchasing a vehicle with cash and amassing savings. The mother, on the other hand, was driving an older vehicle, deferring maintenance on her home, and not contributing to her retirement fund. Both parties testified that they lived modestly during the marriage, so that they could save money, but now the mother and children were living frugally out of necessity. Based on those findings, the conclusion that the father failed to meet his burden of producing evidence showing that a deviation was necessary and the

ultimate finding that a downward deviation was not warranted were not against the manifest weight of the evidence.

¶ 27                                        CONCLUSION
¶ 28          The judgment of the circuit court of Will County is affirmed.

¶ 29          Affirmed.