NOTICE
Decision filed 02/09/23. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2023 IL App (5th) 220586-U

NO. 5-22-0586

IN THE

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| *In re* MARRIAGE OF | ) | Appeal from the |
| | ) | Circuit Court of |
| STEPHANIE A. SESSIONS, | ) | Jasper County. |
| | ) | |
| Petitioner-Appellee, | ) | |
| | ) | |
| and | ) | No. 21-D-4 |
| | ) | |
| JAMES E. SESSIONS, | ) | Honorable |
| | ) | Douglas L. Jarman, |
| Respondent-Appellant. | ) | Judge, presiding. |

_____

JUSTICE WELCH delivered the judgment of the court.
Justices Moore and Barberis concurred in the judgment.

**ORDER**

¶ 1    *Held*: The trial court's decision is affirmed where the court's denial of the respondent's request for maintenance was not against the manifest weight of the evidence, where the court's allocation of parenting time was agreed to by both parties and was in the children's best interests, where the court's classification of certain property as marital property was not against the manifest weight of the evidence, where the marital property distribution was not an abuse of discretion, where the court did not err in not appointing the respondent an attorney for the dissolution proceedings, and where the court did not abuse its discretion in denying the respondent's request for attorney fees.

¶ 2    This appeal concerns the dissolution of marriage action between the petitioner,

Stephanie S., and the respondent, James S.  James S. appears to raise six issues in his *pro se*

1

appellate brief: (1) the trial court's denial of his request for maintenance was against the manifest weight of the evidence, (2) the court erred in its parenting time allocation of the parties' minor children, (3) the court erred in classifying the Dodge Ram truck as marital property, (4) the court erred in its distribution of the marital property, (5) the court erred by not appointing him an attorney, and (6) the court erred in denying his request for attorney fees for when he was represented by an attorney in these proceedings as well as another case that he claimed was related to the divorce. For the following reasons, we affirm.

¶ 3                                    I. BACKGROUND

¶ 4     Pursuant to Illinois Supreme Court Rule 311(a)(5) (eff. July 1, 2018), except for good cause shown, this court is to issue a decision within 150 days after the filing of the notice of appeal. Accordingly, Rule 311(a)(5) requires the decision in this case to be filed on or before February 6, 2023. In order to give this case the attention it deserves, this court finds it necessary to file this disposition past the due date, and we find good cause to issue our decision outside the 150-day timeframe.

¶ 5     Stephanie S. and James S. were married on July 19, 2008. They had two children, K.S., born September 19, 2006, and E.S., born May 29, 2009. On January 27, 2021, Stephanie S. filed a petition for dissolution of the marriage. On December 9, 2021, the trial court entered a bifurcated judgment of dissolution of marriage on grounds only.

¶ 6     On March 31, 2022, the trial court held a hearing on the reserved issues. At the beginning of the hearing, Stephanie S.'s counsel indicated that the parties had reached an agreement with regard to the allocation of parenting time. James S., who was proceeding

2

*pro se*, indicated his consent to the proposed plan. The parties then presented testimony on the disputed issues, such as the allocation of parental decision-making authority and the distribution of marital assets.

¶ 7 Sherry Slankard, K.S.'s eighth-grade school counselor, testified that she did individual counseling with K.S. Slankard believed that Stephanie S. was caring and attentive to K.S.'s needs, and she had no concerns about K.S.'s well-being with Stephanie S. Stephanie S. contacted Slankard to check on K.S. or when she was worried about K.S.'s academics. Slankard noted that, in school, K.S. was becoming more confident academically and was making more friends. K.S. was utilizing the after-school resources for academic assistance. During counseling, K.S. often expressed concern about James S.'s anger and about how it upset her. Slankard never had any contact with James S.

¶ 8 Jordyn Biggs, E.S.'s school counselor, testified that she started doing individual counseling with E.S. in mid-January 2021. Biggs explained that Stephanie S. reached out about concerns that she had about E.S. academically as well as concerns about things going on at home. Since Biggs started working with E.S., Biggs had contact with Stephanie S. about once or twice per month, and E.S.'s grades had improved. Biggs had no concerns about the care that Stephanie S. was providing or about the home environment; she explained that Stephanie S. was attentive and very concerned about her daughter's well-being. She never had any contact with James S.

¶ 9 James S. testified that he was 53 years old; he lived in Xenia, Illinois (about 50 miles from where Stephanie S. resided); he rented his home; he was unemployed; and he and Stephanie S. separated in December 2020. The last time that he was employed was in

January 2020; he worked as a welder fabricator and made $19.50 per hour but was laid off. He had a 401(k) retirement account from that employer. He started receiving unemployment benefits in January 2020 but stopped receiving them in September 2021. His only current source of income was his student loans. In February 2021, he had a double aortic synthetic graft surgery. He had trouble moving, he had also been diagnosed with herniated discs, and he had been sick since 2016.

¶ 10 In December 2021, James S. was ordered to pay $40 per month in child support; he had not made any payments toward child support since that order was entered. He was not currently looking for employment because he was waiting to see if he was approved for social security disability benefits. He applied for those benefits in August 2021. His primary vehicle was a 2012 Dodge Charger that was jointly titled in his and Stephanie S.'s names; the loan that they took out for the vehicle was paid off. Stephanie S.'s primary vehicle was a 2015 Dodge Durango that was purchased in November 2020, shortly before they separated. Stephanie S. made all of the payments on the vehicle loan, and there was a balance of $13,625. They also had a 2001 Dodge Ram Diesel welding truck; they refinanced the truck loan in 2017 after being discharged in Chapter 7 bankruptcy (the original loan was taken out in 2008). The monthly payment on the loan was $320.73, and James S. indicated that he was able to make those payments with the money that he borrowed for school.

¶ 11 James S. acquired a backhoe in 2015, but he sold it to his brother in 2016; he believed it was worth $1000. However, he still had possession of the backhoe, and his brother was now deceased. He and Stephanie S. had a judgment entered against them for

$4076.79 related to medical services at Clay County Hospital. They also owed $616 for 2020 federal taxes and $1458 for state taxes.

¶ 12    Before the separation, Stephanie S. took the children to their medical appointments and attended the parent-teacher conferences at their schools. In January 2021, Stephanie S. obtained a plenary order of protection against him. At that time, Stephanie S. was granted temporary significant decision-making authority for the children. Also, after an emergency order of protection was granted against him, Stephanie S. lost her employment because James S. contacted the hospital's ethics committee about concerns he had about her. She was then unemployed for several months and had to cash out her retirement to support herself and the children. James S. also had pending battery charges against him, and Stephanie S. was the alleged victim in that case.

¶ 13    In July 2021, the order of protection was modified to allow James S. and Stephanie S. to coordinate family counseling with the children. Since then, James S. participated in family counseling sessions at Wellness Loft in Effingham with the children. Although Stephanie S. scheduled those sessions, she was not part of the counseling. The children also attended individual counseling at the Wellness Loft, and Stephanie S. paid for that.

¶ 14    Stephanie S. testified that she lived in Newton, the children lived with her, and she was employed full-time as a nurse. She had a 401(k) retirement account through her current employment that she started contributing to in December 2021. She wanted the welding truck to be sold if it was not being used, so that they could pay off marital debt with the proceeds. She did not believe that James S. sold the backhoe to his brother. She had not received any child support payments from James S., and he had not made any other

5

financial contributions toward the support of the children.  She paid for the children's individual counseling, but she was willing to allow James S. to waive child support if James S. paid that money toward the family counseling sessions.  She asked that the family counseling continue at Wellness Loft because it was important for the children to have consistency, and they had both developed a good relationship with their counselor.

¶ 15    During the marriage, James S. was physically abusive toward Stephanie S., which was the reason she sought an order of protection against him.  Based on their history and the restrictions on their communication, they would be unable to share significant decision-making authority.  She had always been the parent to communicate with the children's schools, schedule their medical appointments, and take them to those appointments.  She had agreed to a modification of the order of protection, so that James S. could still attend the children's school related activities and other extracurricular activities.

¶ 16    Because James S. contacted her previous employer in December 2020, Stephanie S. was questioned about her previous opioid addiction and drug diversion where she took controlled substances for personal use.  She admitted to the allegations and was ultimately terminated from that employment.  However, she self-reported to the board of nursing and was given a compassionate care contract.  Since July 2020, she had been working with an addictionist and was in a very strict program; she explained that she was in counseling, had attended an addiction program, participated in narcotics anonymous, had a rigorous evaluation completed by a nurse addiction specialist, and was in a monitoring program that included regular drug testing and screening.  She had maintained her sobriety since July 2020, and her nursing license had never been suspended.  She was not surprised when

James S. contacted her employer because he had regularly threatened to get her fired if she left him.

¶ 17    After the hearing, on April 21, 2022, the trial court entered an agreed parenting plan, which granted James S. parenting time with the minor children every other Sunday from 12 p.m. until 2 p.m. in a public location and any additional time as agreed upon by the parties. The parenting time allocation was to be reviewed in three months. The parties also agreed that James S. and the children would engage in family counseling. The parties reserved the allocation of parental decision-making authority and all other contested issues.

¶ 18    On May 24, 2022, the trial court entered an order on the remaining issues. After considering the best-interests factors identified in section 602.5(c) of the Illinois Marriage and Dissolution of Marriage Act (Act) (750 ILCS 5/602.5(c) (West 2020)), the court allocated sole parental decision-making authority to Stephanie S. The court noted that, although James S. had been ordered to pay child support, he had made no child support payments. Therefore, the court ordered him to continue paying the family counseling fees in lieu of paying the previously ordered child support. As for the property division, the court determined that the 2001 Dodge Ram welding truck was marital property and ordered that it be sold with the proceeds being paid toward the parties' outstanding debts. The court also determined that the backhoe was marital property and ordered that it also be sold to pay marital debts. Each party was awarded their own vehicles, their own 401(k) accounts, and their own checking accounts. The court ordered that each party was responsible for one-half of the marital debts, one-half of the children's school fees and medical expenses

not covered by insurance, and their own attorney fees.  The court denied James S.'s request for maintenance.

¶ 19    On June 22 2022, James S. filed a *pro se* motion to reconsider, arguing, in pertinent parts, the following: he should be awarded maintenance and reimbursement for his attorney fees because he had no income; he should be allowed more parenting time; he was unable to present all of his evidence at the hearing because he had anxiety; and he made the payments on the Dodge Ram welding truck, so it should be considered nonmarital property. After a hearing on the *pro se* motion, on August 10, 2022, the trial court entered an order by docket entry, in which the court granted the motion to reconsider in part by ordering that certain personal property within Stephanie S.'s possession was James S.'s nonmarital property but denying it in all other respects.  James S. appeals.

¶ 20                                   II. ANALYSIS

¶ 21                          A. Maintenance Determination

¶ 22    The trial court has wide latitude to consider the needs of the parties when awarding maintenance.  *In re Marriage of Schiltz*, 358 Ill. App. 3d 1079, 1084 (2005).  Generally, a court's determination on maintenance is presumed correct.  *In re Marriage of Heroy*, 385 Ill. App. 3d 640, 650 (2008).  Because maintenance awards are within the sound discretion of the trial court, we will not disturb a court's decision on maintenance absent an abuse of discretion.  *Id*.  An abuse of discretion exists only where we can conclude that no reasonable person would take the view adopted by the trial court.  *Id*. at 651.  A party's challenge to a trial court's factual findings regarding a maintenance determination will not be reversed unless the findings are against the manifest weight of the evidence.  *In re Marriage of*

8

*Sturm*, 2012 IL App (4th) 110559, ¶ 3.  Findings are against the manifest weight of the evidence where the opposite conclusion is clearly evident or where the court's findings are unreasonable, arbitrary, and not based on any of the evidence.  *Id.*

¶ 23    Section 504(a) of the Act permits the trial court to grant maintenance for either spouse in amounts and for periods of time as the court deems just and sets out the factors the court should consider when awarding maintenance.  750 ILCS 5/504(a) (West 2020).

¶ 24    These factors include: (1) the income and property of each party; (2) the needs of each party; (3) the present and future earning capacity of each party; (4) any impairment of the present and future earning capacity of the party seeking maintenance; (5) any impairment of the realistic present or future earning capacity of the party against whom maintenance was sought; (6) the time necessary to enable the party seeking maintenance to acquire education, training, and employment; (7) the effect of any parental responsibility arrangements and its effect on a party's ability to seek or maintain employment; (8) the standard of living established during the marriage; (9) the duration of the marriage; (10) the age, health, occupations, and employability of the parties; (11) all sources of private income; (12) the tax consequences to each party; (13) contributions by the party seeking maintenance to the education, training, career, or career potential of the other spouse; (14) any valid agreement of the parties; and (15) any other factor the court finds to be just and equitable. *Id.*

¶ 25    In the present case, the trial court denied James S.'s request for maintenance.  In making this decision, the court noted that James S.'s sole source of income was from his student loans as his unemployment ended in September 2021.  Stephanie S. was employed

as a nurse, and she received no child support from James S., although he was ordered to pay a minimum amount. The court noted that James S. presented no evidence of his needs and that Stephanie S. used all of her income to pay for the ordinary household expenses for herself and the parties' minor children. There was also no evidence presented as to Stephanie S.'s future earning capacity. James S. was previously employed as a welder making $19.50 per hour until he was laid off over two years ago. Although he testified about two recent surgeries, he presented no evidence of how his medical issues impacted his present or future earning capacity. He applied for social security disability but presented no evidence on the reasons for the application.

¶ 26   The trial court noted James S. presented no evidence of his impairment of present and future earning capacity due to devoting time to domestic duties or any impairment of Stephanie S.'s earning capacity. He also presented no evidence on the time necessary for rehabilitation, other than his testimony that he was a full-time student. He did not present any evidence on what he was studying or how long it would take him to be employed in the field he decided to pursue. There was also no evidence of the standard of living established during the parties' marriage. However, the court noted that the parties filed Chapter 7 bankruptcy for which they received a discharge in 2017, and five years later, they had more debts than assets. The parties were married for 13 years, which the court found favored a maintenance determination. However, the court found that James S.'s evidence of his health status was insufficient to justify a finding for maintenance.

¶ 27   James S. does not allege, nor does the record indicate, that the trial court failed to consider the enumerated factors when making its maintenance determination. The court

evaluated the testimony related to the above considerations and found that they did not favor an award of maintenance. In his *pro se* brief, James S. argues that the court should have awarded him maintenance because he was disabled and unable to work. However, in denying maintenance, the court considered the evidence that his sole source of income was from his student loans, he applied for social security disability, and he had two recent surgeries. After considering the above, the court found that James S.'s evidence of his health status was insufficient to justify maintenance and that he failed to present any evidence on how his medical issues impacted his present or future earning capacity. Based on the record and the section 504(a) factors, we find that the trial court's denial of maintenance was not an abuse of its discretion, and the court's factual findings were not against the manifest weight of the evidence.

¶ 28                                  B. Parenting Time Allocation

¶ 29     The parties agreed to a parenting time plan, which was entered by the trial court on April 21, 2022. At the hearing that was held before this order was entered, James S. acknowledged that he agreed that the children would reside with Stephanie S., that he would have parenting time with them every other Sunday from 12 p.m. until 2 p.m. and any additional times agreed upon by the parties, and that the parenting time allocation would be reviewed after three months.

¶ 30     Parents have a fundamental right to make decisions regarding the care, custody, and control of their children. *In re M.M.D.*, 213 Ill. 2d 105, 113 (2004). Thus, the parents may make an agreement concerning the allocation of parenting time. Also, section 602.7(a) of the Act provides that the trial court shall allocate parenting time according to the children's

11

best interests. 750 ILCS 5/602.7(a) (West 2020). We will not overturn the trial court's decision absent an abuse of discretion or unless the decision is against the manifest weight of the evidence. *In re Marriage of Whitehead*, 2018 IL App (5th) 170380, ¶ 15.

¶ 31    In his *pro se* brief, although James S. agreed to the parenting time plan that was entered by the trial court, he now contends that he should be allocated more time with the children so that he can have a close, meaningful relationship with them. He also contends that he agreed to the parenting time plan on the condition that there would be a review within three months. James S. does not argue that his agreement to the parenting time schedule resulted from any fraud, duress, coercion, unfair dealing, gross disparity in the position or capacity of the parties, or newly discovered evidence. Although he does contend that he was under the influence of prescribed mind-altering substances during the hearing, there was no indication from the record that this impacted his ability to understand or appreciate the parenting time schedule that he agreed to. Instead, it appears that he has just changed his mind, and no longer agrees with the schedule.

¶ 32    Also, there is no indication in the record, and James S. does not contend, that the parenting time allocation was not in the children's best interests. The record indicates that there was an order of protection entered against him in which one of the allegations was that he made threats of physical violence against and had been physically violent with the children and that that the reasoning for limiting his parenting time was to give him and the children an opportunity to participate in family counseling. Moreover, if James S. seeks to have the parenting time schedule reviewed as allowed under the agreed order, there is nothing preventing him from requesting that review in the trial court.

12

¶ 33   After carefully considering the record, we affirm the trial court's allocation of parenting time set out in the April 2022 agreed parenting plan.  In so deciding, we note that the trial court's determination regarding the allocation of parenting time is accorded great deference on appeal because it is in the best position to assess the credibility of the witnesses and to determine the children's best interests.  *Id.*

¶ 34                          C. Marital Property Classification

¶ 35   Section 503 of the Act defines marital and nonmarital property and directs the trial court to assign each party his or her nonmarital property and divide the marital property without regard to marital misconduct in just proportions considering all relevant factors. 750 ILCS 5/503 (West 2020).  Before distributing property upon dissolution of marriage, the trial court must classify the property as marital or nonmarital.  *In re Marriage of Demar*, 385 Ill. App. 3d 837, 850 (2008).  Under the Act, all property acquired by either spouse subsequent to the marriage is presumed to be marital property.  750 ILCS 5/503(a) (West 2020); *Heroy*, 385 Ill. App. 3d at 670 (the Act creates a rebuttable presumption that all property acquired after the date of the marriage is marital property, regardless of the manner in which title is held).  Conversely, property acquired before the marriage constitutes nonmarital property.  750 ILCS 5/503(a)(6) (West 2020); *In re Marriage of Mouschovias*, 359 Ill. App. 3d 348, 354 (2005).  Any doubts as to the nature of the property must be resolved in favor of finding that the property is marital.  *In re Marriage of Steel*, 2011 IL App (2d) 080974, ¶ 57.

¶ 36   We will not disturb the trial court's classification of property as marital or nonmarital unless it is against the manifest weight of the evidence.  *Mouschovias*, 359 Ill.

App. 3d at 356. The trial court's decision is against the manifest weight of the evidence if the opposite conclusion is clearly evident or if the court's findings are unreasonable, arbitrary, or not based on the evidence. *Heroy*, 385 Ill. App. 3d at 663.

¶ 37 In this case, during the March 31, 2022, hearing, James S. testified that the parties owned a 2001 Dodge Ram welding truck, they originally took out the loan for the truck in 2008, and they refinanced the truck loan in 2017 after they were discharged from Chapter 7 bankruptcy. After considering the evidence presented, the trial court determined that the 2001 Dodge Ram welding truck was marital property and ordered it be sold so the proceeds could be used to pay off the parties' marital debts. Based on the record, we find that this decision was not against the manifest weight of the evidence. In making this decision, we acknowledge that, in his *pro se* brief, James S. contends that the truck was purchased on September 17, 2007, before the parties' marriage. However, there was no evidence presented to the trial court to support this allegation. As explained above, any doubts as to the classification of property is resolved in favor of finding that it is marital.

¶ 38 D. Marital Property Division

¶ 39 A trial court has broad discretion in the division of marital assets, and we will reverse its determinations only if the court has abused that discretion. *In re Marriage of Wojcik*, 362 Ill. App. 3d 144, 161 (2005). An abuse of discretion occurs only when the trial court's ruling is arbitrary, fanciful, or unreasonable, or where no reasonable person would take the view adopted by the trial court. *In re Marriage of Hluska*, 2011 IL App (1st) 092636, ¶ 61.

14

¶ 40 Section 503(d) of the Act requires a trial court to divide marital property in just proportions. 750 ILCS 5/503(d) (West 2020). However, it is well-settled that this does not require an equal split but rather the most equitable distribution in light of the statutory factors. See *In re Civil Union of Hamlin*, 2015 IL App (2d) 140231, ¶ 61 ("An equitable property division does not necessarily mean an equal distribution; a party may receive a greater share of the property if the relevant factors warrant the result."); *Heroy*, 385 Ill. App. 3d at 661 (an unequal division of marital property may be appropriate depending on the circumstances of each case). The relevant statutory factors to consider are: the contribution of the parties to the marital property; the value of the property set apart for each spouse; the duration of the marriage; the relevant economic circumstances of the parties upon distribution of the property; the age, health, station, occupation, amount and sources of income, vocational skills, and employability of the parties; the custodial provisions for any children; whether apportionment is in lieu of or in addition to maintenance; and the reasonable opportunity of each spouse to acquire capital assets and income in the future. 750 ILCS 5/503(d) (West 2020).

¶ 41 Here, James S. contends that the trial court erred in not awarding him any of the marital assets. In its May 2022 order, the court awarded James S. the 2012 Dodge Charger, his personal property, and the checking and 401(k) accounts in his name. The court awarded Stephanie S. the 2015 Dodge Durango along with the associated debt, her personal property in her possession, and the checking and 401(k) accounts in her name. The court also ordered that certain property, such as the 2001 Dodge Ram and backhoe, be sold to pay off the marital debt as the parties had more debts than assets. After considering the

15

record, we find that the evidence presented at the hearing supported the trial court's determination of the appropriate division of the marital estate, and James S. has not shown that the decision was an abuse of discretion.

¶ 42                                     E. Appointment of Attorney

¶ 43    James S. contends that the trial court erred in not appointing him an attorney during the March 2022 hearing because he was "mentally challenged." Although James S. had the right to hire an attorney and employ the attorney to be his counsel during the dissolution proceedings, he did not have a constitutional right to be appointed an attorney. See *Hermann v. Hermann*, 219 Ill. App. 3d 195, 198-99 (1991) (there was no constitutional ground to extend the right to counsel in a dissolution proceeding). Moreover, based on our review of the record, there was no reason for the trial court to be concerned that James S. might be unable to represent himself because of any mental incapacity.

¶ 44                                        F. Attorney Fees

¶ 45    James S. contends that the trial court erred in denying his request for attorney fees.

¶ 46    Ordinarily, the primary obligation for the payment of attorney fees rests on the party on whose behalf the services were rendered. *In re Marriage of Kane*, 2016 IL App (2d) 150774, ¶ 22. However, section 508 of the Act allows a court to award any party to pay a reasonable amount of the other party's attorney fees. 750 ILCS 5/508 (West 2020). In making a decision on attorney fees, the trial court should consider the relative financial circumstances of the parties, including the allocation of assets and liabilities, maintenance, and the relative earning abilities of the parties. *In re Marriage of Tworek*, 2017 IL App (3d) 160188, ¶ 18. The allowance of attorney fees and the amount awarded are decisions

16

within the sound discretion of the trial court and will not be disturbed absent an abuse of discretion. *In re Marriage of Baniak*, 2011 IL App (1st) 092017, ¶ 9.

¶ 47    In this case, the trial court did not abuse its discretion in denying James S.'s request for attorney fees and ordering each party to be responsible for their own attorney fees and costs. Although James S.'s sole source of income was his student loans, the record reveals that Stephanie S. uses all of her income to pay the ordinary household expenses for herself and the minor children, which includes the cost of the children's individual counseling; James S. has not contributed to the children's expenses and has not paid child support; and at the time of the hearing, the parties had more debts than assets. We also note that the trial court found that there was no evidence presented as to how James S.'s medical issues impacted his present earning capacity. Based on the above and the evidence presented at the hearing, we find that the court's decision was not an abuse of discretion.

¶ 48                                III. CONCLUSION

¶ 49    For the foregoing reasons, we affirm the judgment of the circuit court of Jasper County.


¶ 50    Affirmed.